## UNITED STATES *v.* HUTTO ET AL. (NO. 1).

ERROR TO THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF OKLAHOMA.

No. 691. Argued April 11, 1921.—Decided June 1, 1921.

1. Revised Statutes, § 2078, declaring that "No person employed in Indian affairs shall have any interest or concern in any trade with the Indians, except for, and on account of, the United States," and subjecting the offender to a pecuniary penalty and removal from office, includes transactions with tribal Indians involving land or other property in respect of which the Government has no interest or control. P. 526.

2. This section defines an offense against the United States, within the meaning of Crim. Code, § 37, whether it be itself punishable through a criminal prosecution or only through civil action for the penalty. P. 528.

Reversed.

THE case is stated in the opinion.

*Mr. Leslie C. Garnett,* Special Assistant to the Attorney General, for the United States.

*Mr. Sam K. Sullivan,* with whom *Mr. Henry S. Johnston* was on the brief, for defendants in error:

Under § 2124, Rev. Stats., which is synonymous with § 2078 as to punishment, there is no other alternative than a civil action by the United States to recover all penalties accruing under offenses committed under the title of Indians, including § 2078. *United States* v. *Payne,* 22 Fed. Rep. 426; *In re Seagraves,* 4 Oklahoma, 422.

Section 2078 applies only to Indians who are wards of the Government and whose lands are restricted and does not apply to Indians who have received patents to their land. *Bluejacket* v. *Ewert,* 265 Fed. Rep. 823, 829.

The indictment for conspiracy must charge some act

that has been made a crime by the laws of the United States, or an act made to defraud the United States, and must state the act intended to be carried out by agreement of the parties so that it can be seen that the object of the conspiracy was a crime against the United States or to defraud the United States.

MR. JUSTICE PITNEY delivered the opinion of the court.

This writ of error was brought under the Criminal Appeals Act of March 2, 1907, c. 2564, 34 Stat. 1246, to review a judgment of the District Court sustaining demurrers to an indictment under § 37, Criminal Code, charging a conspiracy to violate § 2078, Rev. Stats., and overt acts done to effect the object of th conspiracy.

Section 37 prescribes: "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be fined," etc.

Section 2078, Rev. Stats., reads thus: "No person employed in Indian affairs shall have any interest or concern in any trade with the Indians, except for, and on account of, the United States; and any person offending herein, shall be liable to a penalty of five thousand dollars, and shall be removed from his office."

The indictment alleges that A. Z. Hutto was a duly appointed and qualified Indian farmer for the Tonkawa Tribe of Indians, Ponca Reservation, Oklahoma, acting as such, and that, under an act of Congress and the rules and regulations promulgated by the Secretary of the Interior, it was his duty to superintend and direct farming and stock raising among said Tonkawa Tribe, to supervise the leasing of Indian lands, and to appraise their value for sale; that Hutto, J. R. White, Ray See, and J. R.

Ricks feloniously conspired together that Hutto, while so employed in Indian affairs, should have an interest and concern in certain trades with the Indians not for or on account of the United States, in violation of § 2078, Rev. Stats., that is to say, that Hutto, while so employed, should have an interest and concern in sales of land by Indians of said tribe, and in the purchase of automobiles and other commodities by said Indians, and that the alleged conspirators would and should persuade, induce, procure, and cause certain Indians named, members of said Tonkawa Tribe, to sell their lands, purchase automobiles and other commodities, borrow money and lend money, and that said Hutto should have an interest and profit in said sales, purchases, and loans. The alleged overt acts need not be recited.

Defendants having filed separate demurrers, the District Court at first sustained them upon the ground that the acts prohibited in § 2078, Rev. Stats., are not a crime against the United States, but acts for which a penalty is provided, to be collected only by a civil action, and hence cannot form the basis of a criminal conspiracy in violation of § 37, Crim. Code.

Upon a rehearing, the demurrers again were sustained, but upon the ground that § 2078 is inapplicable to transactions involving lands or other property with respect to which the Government has no interest or control, and that no such interest or control was alleged in the indictment.

Taking up the second point first: It seems to us the plain terms of § 2078 leave little room for discussion over the proposition that the prohibition is not confined to transactions involving lands or other property in respect to which the Government has an interest or control.

In early days, under the power conferred upon Congress by the Constitution (Art. I, § 8, cl. 3) to regulate commerce with the Indian tribes, some traffic was carried

on with the Indians upon the Government account. As early as the year 1796 (c. 13, 1 Stat. 452) the President was authorized to establish Indian trading posts on the frontiers and in the Indian country; and the agent appointed for each trading house was required to swear or affirm in his oath of office that he would not directly or indirectly be concerned or interested in any trade, commerce, or barter with any Indian or Indians but on the public account. This was a temporary measure, to continue for two years and to the end of the next session of Congress thereafter. Another act, to continue for three years, was approved April 21, 1806 (c. 48, 2 Stat. 402), which required of the superintendent of Indian trade an oath or affirmation faithfully to execute the trust committed to him, and that he would not directly or indirectly be concerned or interested in any trade, commerce, or barter but on the public account. A like oath was required of the agent appointed for each trading house. Still a third act for establishing trading houses with the Indian tribes, approved March 2, 1811 (c. 30, 2 Stat. 652), required a similar form of oath from the superintendent of Indian trade, and from each agent and assistant agent. This act, like the others, was limited to a brief duration.

Section 2078, Rev. Stats., was taken, with but slight change, from § 14 of an Act of June 30, 1834, c. 162, 4 Stat. 735, 738, entitled "An Act to provide for the organization of the department of Indian affairs," and designed not for the carrying on of trade or barter with the Indians on Government account, but to carry out treaty obligations, pay annuities and distribute merchandise to the Indians as stipulated, furnish them with domestic animals, implements of husbandry, and rations as the President might think proper, provide interpreters, blacksmiths, farmers, mechanics, and teachers, as required by treaty, and generally to promote friendly relations with

the Indians and advance their welfare. In this connection the provision of § 14, "that no person employed in the Indian department shall have any interest or concern in any trade with the Indians, except for, and on account of, the United States," manifestly had a significance extending quite beyond any pecuniary interest of the United States in government trade or barter with the Indians. In its original setting, and more emphatically when grouped in the Revised Statutes with other provisions having to do with the supervision and management of the affairs of the Indians, it manifestly was and is designed to insure integrity of conduct on the part of all persons employed in Indian affairs, and an impartial attitude towards the Indians, by excluding from persons so employed all motives of personal gain, so that the duty of the United States as trustee for these dependent peoples, recognized wards of the Government, might be performed with a single regard for their interests appropriate to the fiduciary relation. The purpose was to protect the Indians from their own improvidence; relieve them from temptations due to possible cupidity on the part of persons coming into contact with them as representatives of the United States; and thus to maintain the honor and credit of the United States, rather than to subserve its pecuniary interest.

The District Court erred in its construction of § 2078.

Nor can we sustain the other ground upon which it is contended the demurrers were well taken. Section 37, Criminal Code, is violated by a conspiracy "to commit any offense against the United States" accompanied or followed by an overt act done to effect the object of the conspiracy. It does not in terms require that the contemplated offense shall of itself be a criminal offense; nor does the nature of the subject-matter require this construction. A combination of two or more persons by concerted action to accomplish a purpose either criminal

or otherwise unlawful comes.within the accepted definition of conspiracy. *Pettibone* v. *United States,* 148 U. S. 197, 203. The distinction between a conspiracy and the contemplated offense. that forms its object has often been pointed out. *United States* v. *Rabinowich,* 238 U. S. 78, 85–86, and cases cited. And we deem it clear that a conspiracy to commit any offense which by act of Congress is prohibited in the interest of the public policy of the United States, although not of itself made punishable by criminal prosecution but only by suit for penalty, is a conspiracy to commit an "offense against the United States " within the meaning of § 37, Criminal Code, and, provided there be the necessary overt act or acts, is punishable under the terms of that section.

We have assumed, for the sake of the argument, that under § 2078, Rev. Stats., the United States is confined to the suit for penalty specifically mentioned; but we do not so decide, and in our view the present case does not require an expression of opinion. upon that subject. See *United States* v. *Stevenson,* 215 U. S. 190, 197, *et seq.*

*Judgment reversed, and the cause remanded for further proceedings in conformity with this opinion.*