## UNITED STATES v. BROWN et al.

(District Court W. D. Oklahoma. March 2, 1925.)

No. 4556.

**1. Conspiracy ⬤⟹43(6)—Indictment held not to charge conspiracy to commit offense against the United States.**

Packers and Stockyards Act, Aug. 15, 1921, §§ 312–314 (Comp. St. Ann. Supp. 1923, §§ 8716¼o–8716¼pp), provide that it shall be unlawful for any stockyards owner, market agency, or dealer to use any unfair, unjustly discriminatory, or deceptive practice in connection with the business; that on complaint to the Secretary of Agriculture of any such unfair practice, and after full hearing, he may make an order to desist therefrom; and that for knowingly failing to obey such order the offender shall forfeit the sum of $500 to the United States for each offense. Held, that an indictment for conspiracy to violate said act, which does not allege any hearing, finding, or order of the Secretary, does not charge a conspiracy to commit an offense against the United States within Criminal Code, § 37 (Comp. St. § 10201).

**2. Criminal law ⬤⟹100(1)—Final determination of executive department may be prerequisite to jurisdiction.**

When the law confides to an executive department authority to hear and determine matters within its duties, the courts have no jurisdiction until the action of such tribunal reached finality, and the finding of facts there made is conclusive and binding in subsequent litigation before the courts.

Criminal prosecution by the United States against Garland Brown and others. On demurrer to indictment. Demurrer sustained.

Roy St. Lewis, Asst. U. S. Atty., of Oklahoma City, Okl., and Homer N. Boardman, Sp. Asst. Atty. Gen., for the United States.

Stuart, Sharp & Cruce, and Suits & Hall, all of Oklahoma City, Okl., for defendants.

COTTERAL, District Judge. The indictment is for a violation of section 37 of the Criminal Code (Comp. St. § 10201), by which the essentials of guilt, here applicable, are: (1) A conspiracy to commit an offense against the United States; and (2) an overt act done to effect the object of the conspiracy. By the demurrer, the question is presented whether the indictment is sufficient in alleging that the object of the conspiracy was the commission of such an offense.

[1] That object is stated generally as being to engage in unfair and discriminatory practices in connection with receiving, marketing, buying, and selling live stock in interstate commerce, at the Oklahoma National Stockyards, in Oklahoma City, Okl., in violation of the Packers and Stockyards Act of

August 15, 1921 (42 Stat. L. 159 [Comp. St. Ann. Supp. 1923, §§ 8716¼–8716¼z]). It is specified that the defendants conspired to unjustly refuse to buy live stock from and sell live stock to a certain association and a certain company, market agencies at said stockyards, which had theretofore registered as such with the Secretary of Agriculture, and complied with the said act. Eight overt acts are alleged, consisting of refusals to buy and sell live stock. The supposed offense rests upon the provisions of sections 312(a) to 315, inclusive, of the Packers and Stockyards Act (Comp. St. Ann. Supp. 1923, §§ 8716¼o–8716¼q).

Section 312(a) declares it to be unlawful for any stockyard owner, market agency, or dealer to engage in or use any unfair, unjustly discriminatory, or deceptive practice or device in connection with the receiving, marketing, buying, selling, feeding, shipment, weighing, or handling live stock in interstate commerce at a stockyard. Section 312(b) provides that, whenever a complaint is made to the Secretary of Agriculture, or he believes any such person is violating any of those provisions, the Secretary, after notice and full hearing, may make an order that he shall cease and desist from a continuance thereof, to the extent the Secretary finds it does or will exist.

Section 313 provides that the orders of the Secretary shall take effect within a reasonable time, not less than five days, as prescribed therein, and continue in force until further order, or for a specified time, unless suspended or modified by the Secretary, or suspended or set aside by a court of competent jurisdiction. Section 314 provides that any stockyard owner, market agency, or dealer, who knowingly fails to obey any such order, shall forfeit to the United States $500 for each offense, etc., recoverable by a civil suit in the name of the United States. Section 315 empowers the District Court to enforce obedience to such order by injunction or other process.

Those sections do not provide that the practice declared unlawful shall constitute an offense or subject an agency or dealer to a forfeiture. Instead, prerequisites to liability are a hearing, upon notice, an adverse finding, an order to desist, and a disobedience of the order. But the indictment pleads no such facts, and charges only that the object of the defendants was to engage in the unlawful practice. Was this a contemplated offense within the meaning of the conspiracy statute?

[2] It is contended an affirmative answer is necessary for the reason that any act contrary to public policy is an offense. But on that assumption the policy expressly manifest in the act is that all liability is postponed to await a finding and order by the Secretary of Agriculture. The unlawful practice is a matter for his investigation and decision. It is at least inchoate, with the sole power of inquiry vested in the Secretary. Furthermore, until he finds adversely, the fact cannot be said to exist, and meantime it is not subject to judicial inquiry and proof. This is because when the law confides to an executive department the authority to hear and determine matters within its duties the courts have no jurisdiction until the action of such special tribunal has reached finality, and the finding of facts there made is conclusive and binding in subsequent litigation before the courts. Smelting Co. v. Kemp, 104 U. S. 636, 26 L. Ed. 875; Lee v. Johnson, 116 U. S. 48, 6 S. Ct. 249, 29 L. Ed. 570; Howe v. Parker, 190 F. 738, 111 C. C. A. 466; Dixon v. Cox (C. C. A.) 268 F. 285.

Since the decision of the Supreme Court in United States v. Hutto, 256 U. S. 524, 41 S. Ct. 541, 65 L. Ed. 1073, the cases stand rejected which hold that an act defined by law as a crime must be intended in order to make out a conspiracy. In that case it was assumed, but not decided, that section 2078, Rev. Stat. (Comp. St. § 4026), which forbids persons employed in Indian affairs from having an interest or concern in any trades with Indians, was confined to a suit for a penalty. It was charged that an Indian farmer and others conspired to be so interested and concerned.

It was said that "a combination of two or more persons by concerted action to accomplish a purpose either criminal or otherwise unlawful comes within the accepted definition of conspiracy," and that "a conspiracy to commit any offense which by act of Congress is prohibited in the interest of the public policy of the United States, although not of itself made punishable by criminal prosecution but only by suit for a penalty, is a conspiracy to commit an 'offense against the United States' within the meaning of section 37, Criminal Code, and, provided there be the necessary overt act or acts, is punishable under the terms of that section." The cases cited are Pettibone v. U. S., 148 U. S. 197, 13 S. Ct. 542, 37 L. Ed. 419; U. S. v. Rabinowich, 238 U. S. 78, 35 S. Ct. 682, 59 L. Ed. 1211; and U. S. v. Stevenson, 215 U. S. 190, 30 S. Ct. 35, 54 L. Ed. 153.

However, the opinion is not found to hold

further than that an act subject to a forfeiture is sufficient as an offense, under the conspiracy statute. No other question was necessary to a decision; nor do the cases there cited hold that an act contrary to public policy will constitute an offense, where no penalty or liability attaches. In the Pettibone Case, the conspiracy was to obstruct the due administration of justice, an offense which was punishable by fine and imprisonment. In the Rabinowich Case, it was to conceal assets in bankruptcy, an offense for which imprisonment was imposed. And in the Stevenson Case it is to be noted both that a forfeiture was to be adjudged and that the forbidden conduct was expressly termed a misdemeanor. The indictment was for a violation of the Immigration Act of 1907, c. 1134 (34 Stat. 898) and it was held that although only a forfeiture would be incurred, and it might be sued for and recovered, such remedy was not exclusive and the forfeiture might be enforced by indictment. It was said:

"The original act made it unlawful to assist or encourage the importation or migration of certain aliens into the United States. The amended act declares that such assistance, etc., shall be a misdemeanor. It is not to be presumed that this change is meaningless, and that Congress had no purpose in making it. Nor can we perceive any purpose in making the change except to manifest the intention of Congress to make it clear that the acts denounced should constitute a crime which would carry with it the right of the government to prosecute as for a crime."

Some reliance is placed on the Amendatory Act of June 5, 1924, c. 266 (43 Stat. ——), which provides that the Secretary of Agriculture may require bonds of market agencies and dealers to secure performance of their obligations, and, further, that whenever, after due notice and hearing, he finds any registrant is insolvent or has violated any provision of the act, he may issue an order suspending the registrant for a reasonable specified period. The suspension of a registrant is said to be a penalty. But an obvious difficulty in applying this test of an offense is that there is no allegation in the indictment that there was any notice, hearing, or adverse finding, which condition the authority to make an order of suspension. The defendants, therefore, can only be regarded as intending to do an act that in such a contingency would expose them to the supposed penalty.

The conclusion seems inevitable that the indictment in this case is deficient in not

pleading that the defendants had in contemplation some offending to which a penalty or liability attaches. The most that can be said is that it charges the defendants were to engage in a practice that would subject them to accusation and hearing, but not to a forfeiture until the Secretary of Agriculture should make an adverse order and they should not obey it. It falls short of charging that the defendants had in contemplation any conduct that rose to the seriousness of an offense, and avers only what might, after intermediate proceedings, ripen into an offense.

In the view of this court, the indictment fails on the ground that it does not charge a conspiracy to commit an offense, as required by section 37 of the Criminal Code. The demurrer will therefore be sustained.