## UNITED STATES v. WINNER et al.

District Court, N. D. Illinois, E. D.
September 17, 1928.

No. 17285.

296

Edward J. Hess, Asst. U. S. Atty., of Chicago, Ill.

. Perlman, Goodman & Scolnik, of Chicago, Ill., for defendants Winner.

Otto L. Kolar, of Chicago, Ill., for defendants Katz and Marcus.

WHAM, District Judge. The indictment consists of two counts, the first charging a conspiracy to defraud the United States, and the second a conspiracy to commit an offense against the United States, under the provisions of section 37 of United States Criminal Code, which reads as follows:

"If two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be fined not more than $10,000, or imprisoned not more than two years, or both." 18 USCA § 88.

In each count the charge in substance is that the defendants unlawfully conspired to manufacture for sale and distribution a certain tire gauge which had been patented by "A. Schrader's Son, Inc., Brooklyn, N. Y.," and for the purpose of deceiving the public, and without the consent or license of the patentee, to mark and affix upon the tire gauges so manufactured for sale and distribution certain words and figures with intent to imitate and counterfeit the marks and devices of said patentee, in violation of the provisions of section 50, title 35, United States Code, which reads thus:

"Every person who, in any manner, marks upon anything made, used, or sold by him for which he has, not obtained a patent, the name or any imitation of the name of any person who has obtained a patent therefor without the consent of such patentee, or his assigns, or legal representatives; or

"Who, in any manner, marks upon or affixes to any such patented article the word 'patent' or 'patentee,' or the words 'letters. patent,' or any word of like import, with intent to imitate or counterfeit the mark or device of the patentee, without having the license or consent of such patentee or his assigns or legal representatives; or

"Who, in any manner, marks upon or affixes to any unpatented article the word 'patent,' or any word importing that the same is patented, for the purpose of deceiving the public, shall be liable, for every such offense, to a penalty of not less than $100, with costs; one-half of said penalty to the person who shall sue for the same, and the other to the use of the United States, to be recovered by suit in any District Court of the United States within whose jurisdiction such offense may have been committed."

The point of the demurrer to the indictment and to each count thereof is that a violation of the section of the patent law just quoted is not and cannot be a fraud upon, or an offense against, the United States, so as to constitute the object of an unlawful conspiracy, within the meaning of section 37 of the Criminal Code.

Count I. A conspiracy to defraud the United States, within the interdiction of section 37, Criminal Code, may have for its object a purpose in some way "to cheat the government out of property or money," or a purpose in some way "to interfere with

or obstruct one of its lawful governmental functions by deceit, craft, or trickery, or at least by means that are dishonest." Hammerschmidt v. U. S., 265 U. S. 183, 44 S. Ct. 511, 68 L. Ed. 968; Haas v. Henkel, 216 U. S. 475, 30 S. Ct. 249, 54 L. Ed. 577, 17 Ann. Cas. 1112. No broader definition of the crime has been recognized by our courts, nor does it seem possible that its scope can reasonably be broadened. Unless the conspiracy charged in the first count of the indictment had for its alleged object one of the purposes mentioned, the demurrer must be sustained to this count.

■ The government has no pecuniary or property interest in a patented article after letters patent thereon have been issued to a private individual or corporation. Nor does the government undertake to maintain any administrative function or control over the patented article, its use or disposition, after letters patent are issued. Butterworth v. U. S., 112 U. S. 50, 5 S. Ct. 25, 28 L. Ed. 656; McCormick Harvesting Mach. Co. v. Aultman, 169 U. S. 606, 18 S. Ct. 443, 42 L. Ed. 875.

■ These facts being true, I can conceive of no way in which a counterfeiting of a patented article, or other violation of section 50, title 35, though an act of trickery and deception toward the public, can be said to "cheat the government out of any property or money," or "to interfere with or obstruct one of its lawful governmental functions." It is obvious that violators of said section by their fraudulent and deceitful acts thwart the government's purposes in enacting the patent laws to a degree that is limited only by the number and extent of such violations, and in this sense may be said to defraud the United States of its right to the unimpaired effectiveness of the patent laws. But to give the phrase "to defraud the United States," as used in section 37, this broad significance, would in my judgment do violence to its intendment, and would certainly go far beyond the import of any of the decided cases to which my attention has been directed.

Count II. Counsel for the defendants contend with much force and persuasiveness that by the terms of section 50, title 35, a penalty, recoverable in a qui tam action by an informer, for the benefit of himself and the United States, is the exclusive remedy for its violation; that the penalty cannot be recovered by the United States in its own name in any action or proceeding, either civil or criminal; and, since the prohibited acts are not made a misdemeanor or other crime by the terms of the statute, such acts cannot be an offense against the United States in any sense, and certainly not within the meaning of section 37 of the Criminal Code.

■ Under well-settled principles of statutory construction, I think it must be conceded that the provision in section 50 of a special remedy for its violation, recoverable by special proceedings, excludes all other remedies, and the penalty therein prescribed is recoverable only in a civil suit brought by an informer in his own name for the benefit of himself and the United States. This being true, does such violation amount to an offense against the United States, within the meaning of section 37?

An analysis of the cases which, for the purpose of determining the sufficiency of conspiracy indictments, have construed the meaning of the words "offense against the United States," as used in the conspiracy statute, shows that those words were given a more restricted meaning and application in the earlier cases than in those more recently decided. There seems to be accord among the cases that the object of the unlawful agreement must be the commission of some offense against the United States, in the sense only that it must be some act made an offense by a statute or law of the United States. It is upon the nature and kind of offense created by statute which may properly be held to constitute the object of a conspiracy that the courts divide.

In United States v. Watson et al. (D. C.) 17 F. 147, and In re Wolf (D. C.) 27 F. 610, the word "offense," as used in section 37, was construed to mean only such offense as is by statute made a crime. In a number of subsequent decisions this construction was accepted. In the case of United States v. Payne (D. C.) 22 F. 426, the court held that violations of the statute governing entry and settlement on Indian lands (Rev. St. § 2118; 25 USCA § 180) and the removal of persons from the Indian country (sections 2147, 2148; 25 USCA §§ 220, 221) were punishable exclusively by a penalty to be recovered in a civil action, either by the United States or an informer, and were not indictable, nor subject to prosecution by criminal proceedings, and for this reason could not be the object of a conspiracy under section 37 to commit an offense against the United States.

A kindred view is indicated in United States v. Stevenson, 215 U. S. 190, 30 S

Ct. 35, 54 L. Ed. 153, in which the court, in determining that the act which was charged as the object of the conspiracy was an offense against the United States within the meaning of the statute, first arrived at the conclusion that the penalty for the violation of the statute in question could not only be recovered in a suit by the United States or an informer, as specifically provided in the statute, but under the general rules of law applicable to offenses made punishable by penalty, and in view of the fact that the statute by its terms made its violation a misdemeanor, could also be enforced by indictment or other criminal proceedings. In Pettibone v. U. S., 148 U. S. 197, 13 S. Ct. 542, 37 L. Ed. 419, the court recognized a wider application of section 37, when it defined conspiracy to commit an offense against the United States as "a combination of two or more persons, by concerted action, to accomplish a criminal or unlawful purpose, or some purpose not in itself criminal or unlawful, by criminal or unlawful means."

In United States v. Hutto, 256 U. S. 524, 41 S. Ct. 541, 65 L. Ed. 1073, the court assumed, for the purpose of the decision, that suit for penalty was the exclusive remedy for the violation of section 2078, Rev. St. (25 USCA § 68), though it was not deemed necessary to decide that question in order to determine whether the violation of that statute, charged in the indictment as the object of a conspiracy, constituted an "offense against the United States." Section 2078, Rev. St., reads as follows:

"No person employed in Indian affairs shall have any interest or concern in any trade with the Indians, except for, and on account of, the United States; and any person offending herein, shall be liable to a penalty of five thousand dollars, and shall be removed from his office."

In refusing to uphold the lower court in sustaining a demurrer to the indictment for conspiracy based upon an agreement or combination to violate the statute just quoted, the court said:

"Section 37, Criminal Code, is violated by a conspiracy 'to commit any offense against the United States' accompanied or followed by an overt act done to effect the object of the conspiracy. It does not in terms require that the contemplated offense shall of itself be a criminal offense; nor does the nature of the subject-matter require this construction. A combination of two or more persons by concerted action to accomplish a purpose either criminal or otherwise unlawful comes within the accepted definition of conspiracy. Pettibone v. United States, 148 U. S. 197, 203; 13 S. Ct. 542, 37 L. Ed. 419, 422. The distinction between a conspiracy and the contemplated offense that forms its object has often been pointed out. United States v. Rabinowich, 238 U. S. 78, 85, 86, 35 S. Ct. 682, 59 L. Ed. 1211, 1213, 1214, and cases cited. And we deem it clear that a conspiracy to commit any offense which, by act of Congress, is prohibited in the interest of the public policy of the United States, although not of itself made punishable by criminal prosecution, but only by suit for penalty, is a conspiracy to commit an 'offense against the United States' within the meaning of section 37, Criminal Code, and, provided there be the necessary overt act or acts, is punishable under the terms of that section."

In the case of Biskind v. United States (C. C. A.) 281 F. 47, 28 A. L. R. 1377, the court, quoting with approval the language in the decision of the Hutto Case, said: "But the lack of specific provision for criminal prosecution therefor [referring to contempt of court under section 268, Judicial Code] is not important here, where the prosecution is for conspiracy, not for the contempt." In Taylor v. United States, 2 F. (2d) 444, decided by the Circuit Court of Appeals of this circuit, the court quoted in full the foregoing excerpt from the opinion in the Hutto Case and followed it in principle.

Counsel for the defendants point out the obvious distinction between the statute under consideration in the Hutto Case, supra, and the statute here under consideration, to be that the United States is powerless to enforce this statute in its own name in either a criminal or civil proceeding. They urge that the violation of a statute which the United States cannot enforce in its own name cannot be an "offense against the United States."

In determining whether or not an act in violation of a penal statute of the United States is "an offense against the United States," within the meaning of section 37, the vital question is not whether it is a criminal offense, or punishable by criminal proceedings, or whether the penalty is enforceable by civil action brought by the United States, or exclusively by an informer for the benefit of both the United States and himself, but whether the act is, in the language of the opinion in United States v. Hutto, supra, "prohibited in the interest of the public policy of the United States."

If prohibited in the interest of the public policy of the United States, it is immaterial whether it be a criminal act or an act otherwise unlawful. Pettibone v. United States, supra.

Applying this test to the acts which are prohibited by section 50, title 35, U. S. Code, the conclusion is inescapable that such acts are prohibited in the interest of the public policy of the United States. In discussing this statute in Pentlarge v. Kirby (D. C.) 19 F. 501, the court said:

"The statute in question, though a public statute and designed to prevent impositions upon the community, is, nevertheless, a highly penal one. * * * The offense, being created by statute, does not extend, and cannot in such cases be construed by the courts as extending, beyond the fair meaning of the language employed in designating the offense."

Used in support of a strict construction of the statute, this language of the court expresses well the public nature and purpose of the statute and its inhibitions. Its purpose is not primarily to protect the patentee, but to prevent "impositions upon the community." That this is true is obvious from the language of the statute, and from the provision that the penalty is recoverable, not by the patentee or the owner of the patent, but by any person for the benefit of himself and of the United States.

The section in question is an integral part of the patent laws of the United States and designed to make those laws more effective. So important to the welfare of the nation did its founders deem proper laws "to promote the progress of science and the useful arts" that provision was made therefor in the Constitution. The courts have consistently held that the primary purpose of the patent laws is to benefit the public by promoting the progress of science and useful arts. Motion Picture Patents Co. v. Universal Film Mfg. Co., 243 U. S. 502, 511, 37 S. Ct. 416, 61 L. Ed. 876, L. R. A. 1917E, 1187, Ann. Cas. 1918A, 959, and cases cited therein.

It follows that the patent laws were enacted in the interest of the public, and the acts denounced by the penal section of those laws here in question are prohibited in the interest of the public policy of the United States. In my opinion, count II of the declaration charges a crime.

The demurrer is sustained as to count I, and overruled as to count II, of the indictment.