## FULLER v. UNITED STATES.

### No. 9376.

Circuit Court of Appeals, Ninth Circuit.

Sept. 12, 1940.

Marshall B. Woodworth, of San Francisco, Cal., and S. Luke Howe, of Sacramento, Cal., for appellant.

Frank J. Hennessy, U. S. Atty., and W. E. Licking and Thos. C. Lynch, Asst. U. S. Attys., all of San Francisco, Cal., for appellee.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

MATHEWS, Circuit Judge.

Appellant and seven others were indicted in the District Court of the United States for the Northern District of California on May 18, 1939. Appellant demurred to the indictment on the ground that it did not charge an offense against the United States. The demurrer was overruled and appellant excepted. Thereafter appellant pleaded not guilty, was tried, convicted and sentenced and has appealed, assigning as error the overruling of his demurrer. Thus the question to be decided is whether the indictment charges an offense against the United States.

The indictment is in one count. It alleges that appellant and his codefendants "did feloniously conspire together and with other persons whose names are to [the] grand jurors unknown to acquire gold within the United States of America, from other persons to said grand jurors unknown, and to transport gold without, and not in pursuance of, a license issued by the Secretary of the Treasury of the United States of America to said defendants, and said coconspirators, or to any of them, authorizing said defendants, or any of them, to acquire or to transport gold as aforesaid, in vio-

lation of sections 3 and 4 of the Gold Reserve Act of 1934[1] [31 U.S.C.A. §§ 442, 443] and sections 1 to 28 of the Regulations and amendments thereto duly issued by said Secretary of the Treasury and approved by the President of the United States of America on the 30th day of January, 1934[2] [31 C.F.R. §§ 54.1 to 54.28], pursuant to the authority conferred by said Act;" and that thereafter, at specified times,[3] one or more of the defendants did certain acts to effect the object of the conspiracy.

■ The indictment was obviously intended to—and appellee, the United States, contends that it does—charge an offense under § 37 of the Criminal Code,[4] 18 U. S.C.A. § 88. To charge an offense under § 37, an indictment must charge a conspiracy (1) to commit an offense against the United States or (2) to defraud the United States. That the indictment in this case does not charge a conspiracy to defraud the United States is conceded. The question, therefore, is whether it charges a conspiracy to commit an offense against the United States.

The indictment does not in terms allege that the defendants conspired to commit an offense against the United States. It does allege that they conspired to acquire and transport gold without, and not in pursuance of, a license issued by the Secretary of the Treasury. It characterizes such acquisition and transportation of gold as being in violation of the Gold Reserve Act of 1934 and regulations thereunder. This characterization, however, merely expresses a conclusion of the pleader. The pleader appears to have labored under two delusions: (1) That every unlicensed acquisition or transportation of gold violates the Gold Reserve Act of 1934 and regulations thereunder, and (2) that licenses for the acquisition or transportation of gold may be issued only by the Secretary of the Treasury. Hence the pleader's conclusion that the acquisition and transportation

[1] Act of January 30, 1934, c. 6, §§ 3, 4, 48 Stat. 340. Sections 3 and 4 provide:

"Sec. 3 [§ 442]. The Secretary of the Treasury shall, by regulations issued hereunder, with the approval of the President, prescribe the conditions under which gold may be acquired and held, transported, melted or treated * * *. Gold in any form may be acquired, transported, melted or treated * * * only to the extent permitted by, and subject to the conditions prescribed in, or pursuant to, such regulations. * * *

"Sec. 4 [§ 443]. Any gold withheld, acquired, transported, melted or treated * * * in violation of this Act [sections 441 and 442] or of any regulations issued hereunder, or licenses issued pursuant thereto, shall be forfeited to the United States, and may be seized and condemned by like proceedings as those provided by law for the forfeiture, seizure, and condemnation of property imported into the United States contrary to law; and in addition any person failing to comply with the provisions of this Act [said sections] or of any such regulations or licenses, shall be subject to a penalty equal to twice the value of the gold in respect of which such failure occurred."

[2] Sections 1 to 11 of the regulations contain general provisions. Section 12 provides that gold in any form may be acquired or transported "only to the extent permitted by, and subject to the conditions prescribed in, these regulations

or licenses issued pursuant to these regulations." The regulations permit certain acquisitions and transportations—among others, the acquisition and transportation of fabricated gold, metals containing gold, unmelted scrap gold and gold in its natural state—without the necessity of obtaining or holding any license therefor (§§ 12–21, 28–30, 33). For other acquisitions and transportations of gold, licenses are required (§§ 22–27, 31–34). Licenses to acquire or transport gold for industrial, professional or artistic use are issued by the United States mints (§§ 22–27). Licenses to transport gold imported for reexport are issued by the United States assay office at New York or the United States mint at San Francisco (§§ 32, 33). Licenses to acquire or transport gold for other purposes which, in the judgment of the Secretary of the Treasury, are not inconsistent with the purposes of the Gold Reserve Act of 1934 may be issued by the Secretary, with the approval of the President (§ 34).

[3] The earliest date specified was August 15, 1938. The latest was March 23, 1939.

[4] Section 37 provides: "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be fined not more than $10,000, or imprisoned not more than two years, or both."

which the indictment charges the defendants conspired to effect would have violated the Act and the regulations.

Actually, the Gold Reserve Act of 1934 and regulations thereunder permit certain acquisitions and transportations—among others, the acquisition and transportation of fabricated gold, metals containing gold, unmelted scrap gold and gold in its natural state—without the necessity of obtaining or holding any license therefor. And ordinarily, when licenses are required, they may be and are issued by the United States mints or by the United States assay office at New York. Hence, an acquisition or transportation of gold without, and not in pursuance of, a license issued by the Secretary of the Treasury does not violate the Act or any regulation thereunder unless such acquisition or transportation is one for which a license is required and for which no license has been issued by a United States mint or by the United States assay office at New York.

■ The indictment in this case does not allege, nor does it state facts from which we may infer, that the acquisition or the transportation which it charges the defendants conspired to effect was one for which a license was required. Much less does it show that such acquisition or transportation was one for which only the Secretary of the Treasury could issue a license; or that the defendants did not hold, and could not or would not have obtained, a license from a United States mint or from the United States assay office at New York; or that they conspired or intended to acquire or transport gold to an extent not permitted by the regulations or by such license or in violation of the conditions therein prescribed. Hence, we conclude, the indictment does not charge a conspiracy to violate the Gold Reserve Act of 1934 or any regulation thereunder.

■ Conceding this, appellee here contends that the indictment charges a conspiracy to violate § 5(b) of the Trading with the Enemy Act,[5] 12 U.S.C.A. § 95a, and § 4 of Executive Order No. 6260 [6] (31 C.F.R. § 50.4, 12 U.S.C.A. following § 95) issued thereunder. The contention is rejected. Section 5(b) of the Trading with the Enemy Act and § 4 of Executive Order No. 6260 relate, not to gold, as such, but to gold coin, gold bullion and gold certificates, neither of which is mentioned in the indictment.

The indictment charges no conspiracy to commit an offense against the United States or to defraud the United States. Therefore, it charges no offense under § 37 of the Criminal Code. As it does not charge or purport to charge any other offense, the demurrer should have been sustained.

Judgment reversed.

DENMAN, Circuit Judge (concurring).

The indictment does not charge any crime and it would be an injustice to imprison the appellant. The fact that the defect in the indictment was not pointed out in the brief of appellant and developed only at the hearing of the appeal does not lessen our obligation to determine the propriety of the overruling of the demurrer raising the question that the indictment does not "state facts sufficient to constitute a public offense." The overruling is one of the assignments of error. This obligation is alike to the appellee and to the law of the circuit. Had the defect not been discussed at all, it would be as much our duty to notice it and prevent the appellant's imprisonment and the establishment of a misleading precedent for future indictments.

---

[5] Act of October 6, 1917, c. 106, § 5(b), 40 Stat. 415, as amended by the Act of March 9, 1933, c. 1, § 2, 48 Stat. 1. As thus amended, § 5(b) provided: "During time of war or during any other period of national emergency declared by the President, the · President may * * * prohibit, under such rules and regulations as he may prescribe, by means of licenses or otherwise, any * * * hoarding, melting, or earmarking of gold or silver coin or bullion or currency * * *. Whoever willfully violates any of the provisions of this section or of any license, order, rule or regulation issued thereunder, shall, upon conviction, be

fined not more than $10,000, or, if a natural person, may be imprisoned for not more than ten years, or both * * *." Section 5(b) was further amended by the Act of May 7, 1940, c. 185, 54 Stat. 179, 12 U.S.C.A. § 95a, but with that amendment we · are not here concerned.

[6] Section 4 of the Order provides: "No person other than a Federal Reserve bank shall after [August 28, 1933] acquire in the United States any gold coin, gold bullion, or gold certificates except under license therefor issued pursuant to this Executive order * * *."

I concur in Judge MATHEWS' analysis of the allegation of the indictment concerning the conspired action of acquiring the gold "without, and not in pursuance of, a license issued by the Secretary of the Treasury of the United States of America to said defendants and said co-conspirators, or to any of them, authorizing said defendants, or any of them, to acquire or to transport gold as aforesaid" and in the remainder of his opinion.

Eliminating the quoted words, the indictment then charges a conspiracy to acquire gold "in violation of sections 3 and 4 of the Gold Reserve Act of 1934 and sections 1 to 28 of the Regulations and amendments thereto duly issued by the Secretary * * *." It was suggested that these words, being those of the statute, sufficiently allege the violation of the Act of 1934.

These words describe no act conspired to be done by the conspirators. As well could one be indicted for the crime of assault with a deadly weapon without describing any assault or any deadly weapon, but by merely alleging the accused "had violated section X of the Penal Code of Ruritania," which section creates such a crime. I cannot agree that it is an archaic notion that such an indictment is invalid if the word archaic means not presently the law.

The rule that an indictment may describe the crime in the words of the penal statute applies to the description of the accused's acts. Apparently what was intended to be charged here is, inter alia, the act of conspiring to do another and prohibited act, i.e., to acquire a certain kind of gold (described factually as of the character of the gold requiring a license for acquisition or transport) without a license issued by the Secretary or any agency of the United States. The draftsman in drawing the pleading would be on safer ground if he did not mention the law and regulations violated and followed a practice of merely noting them in a separate memorandum in a margin of the indictment.

HEALY, Circuit Judge (dissenting).

Appellant's sole contention here in respect of the insufficiency of the indictment is that the Gold Reserve Act of 1934 prescribes civil penalties only; hence a conspiracy to violate the act is not a conspiracy to commit an offense against the United States, within the meaning of § 37 of the Criminal Code, 18 U.S.C.A. § 88. The majority opinion does not discuss this

contention, although it appears inferentially, and I think properly, to reject it.

The act prohibits the acquisition or transportation of gold except under conditions to be prescribed by treasury regulations. It is the rule that a conspiracy to do an act prohibited by law in the interest of the public policy of the United States is punishable under the terms of the conspiracy statute although the act itself is not made punishable as a crime, provided of course there be the necessary overt act or acts in pursuance of the conspiracy. United States v. Hutto, 256 U.S. 524, 41 S.Ct. 541, 65 L.Ed. 1073; Taylor v. United States, 7 Cir., 2 F.2d 444; United States v. Winner, D.C.Ill., 28 F.2d 295, affirmed 7 Cir., 33 F.2d 507. Hence appellant's point is without merit.

The court, however, has found the indictment insufficient on other grounds, not urged or suggested by the accused. Despite the admonition of the statute (18 U.S.C.A. § 556) that "no indictment found and presented by a grand jury in any district or other court of the United States shall be deemed insufficient, nor shall the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant", the judgment is reversed on refinements so subtle as to have escaped the notice of counsel.

The indictment charges that appellant feloniously conspired with other named defendants to acquire gold within the United States, from other persons, and to transport gold, in violation of sections 3 and 4 of the Gold Reserve Act of 1934 and sections 1 to 28 of the regulations, and amendments thereto, duly issued by the Secretary of the Treasury and approved by the President on the 30th day of January, 1934, pursuant to the authority conferred by said act. It further charged that during the existence of the conspiracy various of the defendants, naming them, did acts which are described in detail, in furtherance of the conspiracy and to effect its object. These averments are summarily waved aside by the majority as "the mere conclusion of the pleader".

I confess my inability to follow this line of reasoning. In language quite intelligible the indictment describes a conspiracy to traffic in gold in violation of the act and of existing treasury regulations. That should have been, and apparently was, sufficient to advise appellant of the nature of the charge

against him. The averment is substantially in the language of the act. After providing that the Secretary of Treasury shall, by regulations issued with the approval of the President, prescribe the conditions under which gold may be acquired and held, etc., the statute states that "gold in any form may be acquired, transported * * * only to the extent permitted by, and subject to the conditions prescribed in, or pursuant to, such regulations."

As said in Wong Tai v. United States, 273 U.S. 77, 81, 47 S.Ct. 300, 301, 71 L.Ed. 545, "it is well settled that in an indictment for conspiring to committ an offense—in which the conspiracy is the gist of the crime—it is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy [citing cases], or to state such object with the detail which would be required in an indictment for committing the substantive offense [citing cases]. In charging such a conspiracy 'certainly, to a common intent, sufficient to identify the offense which the defendants conspired to commit, is all that is' necessary."

While, as will presently appear, it need not have done so, the indictment does in express terms, as well as by implication, negative the possession of a license. It is true that in most instances the licenses prescribed by the regulations are actually issued by the mints; but these licenses, as the regulations provide, are issued by direction and on behalf of the Secretary of the Treasury. Obviously, the mints are merely agents of the Secretary for this purpose, and in legal contemplation the licenses issued are the licenses of the Secretary.

But assuming the substantial inaccuracy of this averment, it may and should be disregarded as surplusage. The word "license" does not appear in the prohibitory clause of the statute, and under the most stringent rule it was unnecessary to negative the proposition that a license had been obtained by the conspirators. Joyce on Indictments, 2d Ed., § 475, p. 574; United States v. Cook, 17 Wall. 168, 21 L.Ed. 538. The possession of a license was purely a matter of defense, not requiring negation. Shelp v. United States, 9 Cir., 81 F. 694; Ruffins v. United States, 9 Cir., 114 F. 2d 696, decided September 11, 1940.

It is intimated in the main opinion that the government concedes the infirmities there dwelt upon. There was no such concession. On the appeal counsel for the United States appear to have been unduly impressed by appellant's contention, which I have described, that a charge of conspiracy could not be predicated on a non-criminal statute. Hence counsel for the government urged in the alternative that the indictment is broad enough to charge a conspiracy to violate the Trading with the Enemy Act, as amended, which is a criminal statute. So much for the concession.

Rejecting the government's view, and apparently ignoring appellant's contention as ill-founded, the court proceeds to determine the case on a theory of its own. In doing so it has resorted to what seem to me archaic notions of criminal pleading with which I am constrained to express my total disagreement.