Thomas Henry HUNSAKER, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 16596.

United States Court of Appeals
Ninth Circuit.

May 23, 1960.

Seitz, Easley & Whipple, Norman L.
Easley, Portland, Or., for appellant.

C. E. Luckey, U. S. Atty., Robert C. Snashall, Asst. U. S. Atty., Portland, Or., for appellee.

Before MAGRUDER, HAMLEY and KOELSCH, Circuit Judges.

MAGRUDER, Circuit Judge.

This appeal is from a judgment of the United States District Court for the District of Oregon imposing upon appellant a prison sentence of 18 months, entered after trial upon a verdict of guilty rendered by the jury.

On February 4, 1959, the grand jury returned an indictment against Thomas Henry Hunsaker and Glen Earl Adkisson, since deceased, charging a criminal conspiracy, in violation of 18 U.S.C. § 371, to commit offenses against the United States, that is to say, to violate 31 U.S.C.A. §§ 440–443 and the regulations, commonly known as the "Gold Regulations", issued and promulgated thereunder. The indictment also charged a criminal conspiracy "to defraud the United States in the exercise of its governmental functions * * * in that defendants, without a license duly issued, did acquire, hold, transport and offer to sell and dispose of, at any one time, fine gold in quantities in excess of that permitted by said regulations." The indictment charged the performance of three "overt acts" in pursuance of said conspiracy.

18 U.S.C. § 371, under which defendants were indicted, provides as follows:

"If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

"If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor."

It will be noted that two separate types of conspiracy are denounced, a conspiracy "either to commit any offense against the United States, or to defraud the United States". This language has for a long time been on the books. See Rev.Stat. § 5440 (1875). United States v. Hutto, 1921, 256 U.S. 524, 41 S.Ct. 541, 65 L.Ed. 1073, decided that the government could establish a conspiracy to commit an "offense against the United States" without showing a conspiracy to commit any offense made punishable by a criminal prosecution, provided the conspiracy was to commit any offense which by act of Congress is prohibited in the interest of the public policy of the United States but is made punishable only by a civil suit for a statutory penalty. In Haas v. Henkel, 1910, 216 U.S. 462, 479, 30 S.Ct. 249, 254, 54 L.Ed. 569, referring to a conspiracy "to defraud the United States", the Court held that the statutory language was broad enough "to include any conspiracy for the purpose of impairing, obstructing, or defeating the lawful function of any department of government." It is true these two cases were decided under an earlier version of the statute, but we have no doubt that they are fully applicable today.

As appears from the above quotation, the Congress provided the penalty for a criminal conspiracy as being a fine of not more than $10,000 or imprisonment for not more than five years, or both. However, the Congress was impressed with the injustice of permitting a felony punishment on conviction for conspiracy to commit a misdemeanor only; and hence it wrote in the exception contained in the second paragraph of § 371 providing that if the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, "the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor." Thus, the only exception to be found in the statute relates to a case where the conspiracy is to commit a substantive misdemeanor.

The exception is not applicable where, as here, the substantive "offense against the United States" was not a misdemeanor but was enforceable only where the one remedy given was a suit for a civil penalty. Since the penalty imposed in the judgment under review is well within the limit of the penalty for a criminal conspiracy which the Congress has prescribed in the first paragraph of § 371, it is obvious that the judgment is not unlawful on that account. Whatever incongruity there may be in imposing a greater penalty for a conspiracy to commit an offense against the United States which is neither a felony nor a misdemeanor than would be the penalty had the offense against the United States been a misdemeanor only, is a matter for the Congress to consider. The language it used admits of no debate. See United States v. Wiesner, 2 Cir., 1954, 216 F.2d 739.

Appellant's main contention is that the Gold Reserve Act of 1934 is unconstitutional. This contention was exhaustively considered by us in the recent case of Laycock v. Kenney, 9 Cir., 1959, 270 F.2d 580, certiorari denied 1960, 361 U.S. 933, 80 S.Ct. 373, 4 L.Ed.2d 355, where we upheld the constitutional validity of the underlying statute and of the gold regulations issued pursuant thereto. We are not disposed to examine into this question again.

Appellant also makes the contention, obviously a case of grasping at straws, to the effect that the trial court committed prejudicial error in his instructions to the jury in that he implied that the defendants were guilty. It appears that in the course of the charge to the jury, which was generally fair to the defendants, and in which the trial judge carefully explained to the jury that they were the exclusive judges of the facts in the case and of the credibility of all the witnesses, he had occasion to tell the jury that they were not to be disturbed by the fact that they might believe some other persons, not charged in the indictment, to be "also" guilty; that all that the jury had to concern themselves with was that guilt was proven beyond a reasonable doubt as to the named defendants. In this connection the trial judge charged:

"You are not called upon to return a verdict as to the innocence or guilt of any other person or persons, so if the evidence convinces you beyond a reasonable doubt of the guilt of the defendants or any of them, you should so find, even if you believe one or more other persons also are guilty. You will recall that there was some testimony that the Biles likewise were the ones who melted down this gold in the presence of one of the defendants here. Now you may find that these people might be guilty also, but they are not before us, and there is nothing that you can do to find them guilty. Your sole inquiry should be: Did the evidence in this case prove beyond a reasonable doubt that one or both of these defendants,—that is, Hunsaker or Adkisson,—are guilty?"

When counsel were called to the judge's chambers at the conclusion of the charge, the only exception which counsel for the defendants took thereto was the above statement which counsel asserted "left the impression upon me that you were assuming inadvertently that these defendants were guilty." In the colloquy that followed, the court said it was merely a slip of the tongue which he was going to correct. Thereupon the trial judge gave this further instruction to the jury:

"My attention has been called to the fact that I may have made a slip of the tongue. I want to correct it, if I did.

"You will recall that I was talking about the fact that the only people on trial are Hunsaker and Adkisson. You do not have to worry about anybody else. Now it is said that in discussing that I talked about two people, Biles, and likewise I said you may also find them guilty, the implication being that I might have inferred to you that I have come to the conclusion that Hunsaker and Adkisson are guilty by that statement. If

anybody got that idea, which I do not believe anybody did, but if they did I did not mean it that way. This is a good time to tell you again what I have told you many times. I am going to tell you what the law is; you tell me what the facts are, and you apply the facts to the law, and even if I should believe that one witness was not telling the truth or one of the defendants or both of them were guilty, you would be at liberty to disregard anything I said or any looks of mine because under the law you are the sole and exclusive judges of the facts and the credibility of all witnesses. I did not intend to tell you how I would decide this case because in past cases sometimes I tell you afterwards what I would have done, but I do not tell you before, and I did not intend to do it now."

Counsel for the defendants were still not satisfied with the foregoing correction and saved an exception to the charge. It does not appear from the transcript of the record before us that counsel for the defendants ever moved for a mistrial on account of an irremediable error committed by the trial judge, and it is clear that the explanation of the incident, which the trial judge promptly gave to the jury, was eminently satisfactory.

■ Appellant relies particularly upon the decision of the Supreme Court in Hammerschmidt v. United States, 1924, 265 U.S. 182, 44 S.Ct. 511, 512, 68 L.Ed. 968. In that case the charge of conspiracy was solely that appellants had conspired "to defraud the United States" by impairing, obstructing and defeating a lawful function of its government, to wit, that of registering for military service all male persons between the ages of twenty-one and thirty through the printing, publishing and circulating of handbills and other printed matter intended and designed to counsel, advise and procure persons subject to the draft to refuse to obey it. The Supreme Court held that the trial judge committed error in overruling a demurrer to the indictment; that the demurrer should have been sus-

tained and the indictment quashed. The Court pointed out that to conspire "to defraud the United States" meant primarily to cheat the government out of property or money, but also it meant to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest. The indictment here followed the terms of the statute. We shall assume that so much of the indictment was defective as related to a conspiracy "to defraud the United States" in its failure to allege deceit, craft or trickery, or at least by means that are dishonest (but see United States v. Barrios, D.C.S.D. N.Y.1952, 124 F.Supp. 807, affirmed United States v. Wiesner, 2 Cir., 1954, 216 F.2d 739). But it does not appear from the record that appellants asked the trial judge to quash the indictment or any part thereof or to dismiss the same for the reasons stated. The case went to trial, and in the course of his charge to the jury the judge said that to conspire to defraud the United States

"means primarily to cheat the Government out of property or money, but it also means to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest. Therefore, in order to find the defendants guilty of the charges in the indictment, you must find that they were guilty of a conspiracy and that an object of the conspiracy was to obstruct one of the Government's lawful functions by dishonest means."

Counsel for the defendants took no exception to this portion of the charge. The trial judge committed no error in denying defendants' motion for a directed verdict on the ground that the indictment failed to state facts sufficient to sustain the charge that the defendants conspired to defraud the United States. Certainly, so far as the indictment charged a conspiracy to commit an offense against the United States, it was unexceptionable.

A judgment will be entered affirming the judgment of the District Court.