## UNITED STATES v. BROWN et al.
### No. 18585.

District Court, W. D. Kentucky.
Dec. 16, 1933.

T. J. Sparks, U. S. Atty., and Claude Hudgins, Asst. U. S. Atty., both of Louisville, Ky., and Byron E. Tatum, Sp. Asst. to Atty. Gen., for the United States.

Arthur B. Bensinger and Woodward, Hamilton & Hobson, all of Louisville, Ky., for defendants.

HOUGH, District Judge.

 The defendants in the above-entitled case were indicted by the grand jury on the 27th of September, 1933, for violation of section 88, title 18 USCA, section 37 (Rev. St. § 5440) of the Criminal Code, for conspiracy.

The indictment alleges that Brown and Jones at various times violated the 10 per cent. loan limit provisions of title 12 USCA § 84, Rev. St. § 5200, and that the defendant Latta was the borrower in some instances, with knowledge of such violations. The defendants filed separate demurrers to the indictment, which have been submitted to the court upon oral arguments and briefs. The allegations of the indictment bring it squarely under a conspiracy to commit an offense against the laws of the United States. No claim is made or suggested that it is a conspiracy to defraud the United States. The offense complained of is found in title 12 USCA § 93, Rev. St. § 5239, wherein it is provided: "And in cases of such violation (referring to overloaning the ten per cent. limit of section 93), every director who participated in or assented to the same shall be held liable in his personal and individual capacity for all damages which the association, its shareholders, or any other person, shall have sustained in consequence of such violation." The only question raised by the demurrer of sufficient import to discuss is whether or not the language used by Congress, just quoted, may be construed to come within the purview of the penal section under which the indictment is drawn, wherein it makes the crime of conspiracy "to commit any offense against the United States."

The position of the government is that section 84, title 12 USCA, Rev. St. § 5200, does not permit the loaning of the funds of a national bank in excess of 10 per cent. of its authorized capital, and that so doing is against the law, and therefore an unlawful act, which brings it within the construction requirements of the term "offense" as used in the conspiracy statute. Pettibone v. United States, 148 U. S. 197, 13 S. Ct. 542, 545, 37 L. Ed. 419; U. S. v. Hutto et al., 256 U. S. 524, 41 S. Ct. 541, 65 L. Ed. 1073; U. S. v. Winner (D. C.) 27 F.(2d) 295. The earlier cases construed the term "offense" as used in the penal section to apply only to contemplated or perpetrated acts in violation of the criminal laws. But it is contended that, in the later decisions, particularly the three just cited, the courts have broadened the interpretation of the term to include any unlawful act contrary to public policy. In the Pettibone Case, supra, the court laid down the principle that "A conspiracy is sufficiently described as a combination of two or more persons, by concerted action, to accomplish a criminal or unlawful purpose." In the Hutto Case, supra, the court said on page 529 of 256 U. S., 41 S. Ct. 541, 543: "And we deem it clear that a conspiracy to commit any offense which by act of Congress is prohibited in the interest of the public policy of the United States, although not of itself made punishable by criminal prosecution, but only by suit for penalty, is a conspiracy to commit an 'offense against the United States.'" The District Court in the Winner Case, supra, had before it the construction of the patent laws in reference to mismarking of patents, and the penalty thereto attached recoverable in a civil suit, and held, in passing upon a demurrer to the indictment brought under the conspiracy section, that the act was an "offense," and that the vital question is not whether it is a criminal offense or punishable by criminal proceedings or whether the penalty is enforceable by civil action brought by the United States or exclusively by an informer for the benefit of the United States and himself, but whether the act is prohibited in the interest of public policy. In the Pettibone Case, the court had before it a conspiracy indictment based upon the violation of a penal law punishable by fine or imprisonment or both (Rev. St. § 5399 [18 USCA § 241]), and in the Hutto Case it had before it, as the foundation for the offense under a conspiracy indictment, the penal section (25 USCA § 68, Rev. St. § 2078), providing that "Any person offending herein, shall be liable to a penalty of $5,000, and shall be removed from his office."

These decisions must be construed in the light of the respective situations and facts before the court. Those decisions are without doubt authority for a broader legal conception of the term "offense" than was permissible under the earlier decisions. This authority may not be extended beyond the limits and purview of the cases the courts had before them and upon which the announcements were based.

That the applicable portion of section 93 is remedial and provides only for a civil remedy is not open to successful contradiction. Stephens v. Overstolz (C. C.) 43 F. 465; Bowerman v. Hamner, 250 U. S. 504, 39 S. Ct. 549, 63 L. Ed. 1113. The import of the language itself used, is, it is believed, sufficient to indicate that Congress did not have in mind the assessment of a penalty in the premises. It is simply a statutory enactment of a common-law liability to recover civil damages for the amount of the loss and very likely for any additional damages flowing therefrom. The court is of opinion that "offense" as used in the conspiracy statute must have for support, in order to legally carry out its purpose, the violation or contemplated violation of a law of the United States, carrying for its violation some type of penalty.

The demurrer may be sustained.