## W. J. DILLNER TRANSFER CO. v. INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN, AND HELPERS OF AMERICA, et al.

### Civ. A. No. 6677.

United States District Court
W. D. Pennsylvania.

Dec. 11, 1950.

Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for plaintiff.

C. J. Margiotti, (of Margiotti & Casey), Pittsburgh, Pa. (Joseph A. Padway and James A. Glenn, Washington, D. C. of counsel), for defendant.

BIGGS, Circuit Judge.

The plaintiff filed suit against International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (the Brotherhood), against the Brotherhood's representative, Dietrich, against General Teamsters, Chauffeurs, Helpers, Local Union No. 249, against Teamsters Joint Council No. 40, and its president, McHale, and against nine other individual defendants. The plaintiff is a Pennsylvania corporation. The Brotherhood is alleged to have more than one hundred thousand members and its principal office in Indiana, and Dietrich, its representative, is alleged to be a resident of Allegheny County, Pennsylvania. It is probable that many of the members of the Brotherhood are residents of Pennsylvania, but it is clear that most, if not all, of the other defendants are Pennsylvania citizens.

The complaint, which is inartistically drawn, attempts to set up six causes of action. Paragraph 1 alleges that the first cause of action arises under the "War Labor Disputes Act", citing that statute, and the "Labor Management Relations Act, 1947."[1] Without break or interruption and in the identical sentence the paragraph goes on to say, " * * * also [sic] because of diversity of citizenship when the amount in controversy exceeds Three Thousand Dollars ($3,000) * * *". In the same sentence reference is made to Section 19 of the former Criminal Code, now Section 241 of Title 18 United States Code Annotated, to Section 41(8) of Title 28, 1940 ed., now Section 1337 of Title 28, United States Code Annotated, and to the antitrust laws of the United States. All of the statutes referred to seem to be set out as a basis for jurisdiction in many of the paragraphs of the complaint and the pleader from time to time endeavors to base causes of action upon

some or all of them in various combinations.

By the first eight paragraphs of the complaint the plaintiffs sets up a cause of action based upon the "War Labor Disputes Act", 57 Stat. 163, c. 144, 50 U.S.C.A. Appendix, §§ 1501–1511, and alleges, inter alia, that it entered into labor agreements with the Brotherhood which the Brotherhood broke because of a dispute which was subject to the "grievance procedure" set up in the contracts and that the other defendants then caused the plaintiff's employees to strike. Paragraph 9 alleges that the defendants, their agents and representatives, " * * * violated the provisions of and committed offenses against the provisions, spirit and purpose of War Labor Disputes Act in complete disregard of contracts between the parties and also in violation of plaintiff's civil rights, and, as a direct result of defendant's [sic] conduct plaintiff has been damaged in the sum of $50,000."

Section 8(a) of the War Labor Disputes Act, 50 U.S.C.A. Appendix, § 1508(a), provided that there should be no interruption by labor disputes of war production until the procedure outlined in that section and by the Act had been followed. Subsection (c) provided that any person who wilfully failed or refused to perform the acts looking to arbitration of a labor dispute should be liable in damages to any person injured thereby and to the United States. Some of the allegations of the complaint are drawn as if to state a cause of action for damages arising under the War Labor Disputes Act, as we have said. But Section 10, 50 U.S.C.A. Appendix, § 1510, provided that "Except as to offenses committed prior to such date, the provisions of this Act * * * shall cease to be effective at the end of six months following the termination of hostilities in the present war, as proclaimed by the President * * *." Section 6 of the Act, 50 U.S.C.A. Appendix, § 1506, created criminal penalties for interference with government operation of plants. The term "offenses",[2] as used in

---

1. 61 Stat. 136 et seq., 29 U.S.C.A. §§ 141 to 197.

2. The term "offenses" is commonly defined as "The doing of that which the penal law forbids to be done or omitting to do what it commands." See Bouvier's Law Dictionary, Rawle's 3rd Revision, Vol. 3, p. 2399 and 46 C.J. pp. 905–907.

Section 10, might be construed as referring only to the crimes created in and prohibited Section 6, and the exception of Section 10 might be construed as saving only to the United States the right to prosecute individuals for crimes defined in Section 6, after the date on which the provisions of the Act ceased to be effective, such crimes having been committed prior to June 30, 1947.[3]

Section 8(c) of the War Labor Disputes Act sounds in tort and crimes may be, and generally are, torts, but the term "offenses" should not be limited to crimes here. I conclude that the excepting clause of Section 10 refers not only to the crimes created by Section 6 but also to the torts and to the tort actions created by Section 8. The word "offense" usually used to describe a crime, is broad enough to include a civil injury for which the injured party may seek redress by suit. Judge Cooley in his work on Torts, quoting with approval from Austin's Jurisprudence, said: "An offense which is pursued at the discretion of the injured party or his representative is a civil injury. An offense which is pursued by the sovereign or the subordinate of the sovereign is a crime." See Cooley on Torts, Second Edition, p. 96. The cause or causes of action based on the War Labor Disputes Act referred to in the complaint arose prior to the date on which the provisions of the Act ceased to be effective. The fact that the instant suit was filed after the date on which the Act terminated is not pertinent. The cause or causes of action which accrued prior to the expiry date of the statute may be successfully maintained by the injured party after that date.

The motions to dismiss are denied as to the first cause of action.

The word "offense" ordinarily is used in the sense indicated in the Constitution of the United States, Article I, Section 6. See, as helpful on this point, the discussion of the offense of contempt in Pendergast v. United States, 317 U.S. 412, 416–421, 63 S.Ct. 268, 87 L.Ed. 368. Note how the term "offense" is used in the Federal Rules of Criminal Procedure, 18 U.S.C.A. See for example the provisions of Rules 4(a) and 8(a). But,

as is indicated in this opinion, I believe the word "offenses" has a broader meaning here.

3. The provisions of the Act ceased to be effective at twelve o'clock noon on June 30, 1947, the Presidential Proclamation, No. 2714, having been made on December 31, 1946 at noon. See 12 F.R. 1, quoted 50 U.S.C.A. "War and National Defense", Appendix, § 601 note.