650

■ Defendant contends that this case is on all fours with the case of United States v. Foley, supra. We believe not. In this case we find that the defendant was negligent and at fault. The evidence establishes that defendant was negligent in failing to furnish sufficient reinforcement steel to enable plaintiff to perform the contract in the specified time in an orderly and efficient manner. Notwithstanding the urgency of· this job, the shortness of the time to perform it in, and the vitalness of the reinforcement steel in the performance of the job, defendant (1) did not advertise for bids on the steel until September 4, 1945; (2) upon receiving no bids from any of the 20-odd steel companies invited to bid, defendant only readvertised for 80,000 pounds when it could and should have obtained the estimated 264,000 pounds needed for the job, or at least another 80,000 pounds; (3) made no effort to obtain more than the 80,000 pounds of steel for the job until November 30, 1945; (4) informed plaintiff that more steel had been ordered when in fact it had not; (5) did not authorize for an extended period after its arrival the use of various quantities of steel that defendant and plaintiff had secured in 1946; and (6) did not place orders for the steel, with delivery being delayed if desired, while the steel could still have been obtained under priorities. The evidence also shows that plaintiff could have obtained the steel as an accommodation, as it subsequently in fact did, had defendant apprised plaintiff of its inability to obtain the steel. Also, defendant's agents, who were in constant contact with various steel companies' representatives, were apparently oblivious to the shortage of this type steel caused by the steel companies' desire to manufacture other and more profitable types of steel.

■ Under the circumstances defendant failed to act diligently and its negligence directly caused the delay here complained of. There is no provision, or room for implication, in the contract permitting defendant to negligently delay the performance of it. On the contrary, we believe that under the circumstances there was an implied warranty upon the part of the Government to provide necessary steel in order that plaintiff could complete the contract in the specified time, and the negligent failure to do so was a breach thereof. These facts distinguish this case from that of United States v. Foley, supra; Barling v. United States, 111 F.Supp. 878, 126 Ct.Cl. 34; Otis Williams & Co. v. United States, 120 Ct.Cl. 249.

The delay occasioned by the negligent failure of defendant to provide reinforcement steel as required caused both the prime contractor and the subcontractor to incur costs which would not otherwise have been necessary.

We find that plaintiff is entitled to recover the costs occasioned by the delay of the defendant in furnishing necessary reinforcement steel.

The case is referred to a Commissioner of this court to determine the amount of such costs which plaintiff is entitled to recover.

JONES, C. J., and MADDEN, WHITAKER and LITTLETON, JJ., concur.

DUGAN & McNAMARA, Inc.,
v.
THE UNITED STATES.
No. 545–52.

United States Court of Claims

Decided Oct. 5, 1954.

G. Fred DiBona, Philadelphia, Pa., for plaintiff. James F. Masterson, Philadelphia, Pa., was on the brief.

Jess H. Rossenberg, Washington, D. C., with whom was Asst. Atty. Gen. Warren E. Burger, for the defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER and MADDEN, Judges.

LITTLETON, Judge.

Plaintiff brought this suit to recover $93,312.07 alleged to be due for services furnished the defendant during the period January to May 1947 under stevedoring contracts with the Army. The case is now before the court on plaintiff's motion to dismiss defendant's counterclaims.

Defendant admits that $93,033.04 has been earned by plaintiff under the 1947 contracts but alleges in its answer that full payment has been made to plaintiff by offsetting against that sum plaintiff's alleged indebtedness to defendant which arose out of prior contracts between the parties. Defendant has set forth in its answer to plaintiff's petition six counterclaims, all of which arose in connection with stevedoring contracts between plaintiff and the Army or War Shipping Administration during the years 1944–45.

The first four counterclaims rest on the common law right to recover overpayments charged by plaintiff and other contract damages alleged to have been sustained by defendant on these prior contracts. The total amount claimed in these first four counterclaims is $105,-571.28. The fifth represents a claim against plaintiff under the False Claims Statute, 31 U.S.C.A. § 231, alleging fraud on plaintiff's part relative to the alleged overpayments. The liability assessed by that statute is double the amount of the actual damages sustained plus $2,000 for each act committed in violation of the statute. The sixth counterclaim rests

on the identical premise with the same measure of damages as the fifth except that the fraudulent acts are alleged to be comprehended within the provisions of Section 19(c) (1) of the Contract Settlement Act of 1944, 58 Stat. 667, which now appears as Section 119 of Title 41 of U.S.C.A.

Plaintiff has moved to dismiss these counterclaims on three grounds: (1) The court lacks jurisdiction over all the counterclaims since the causes of action upon which they are based accrued more than six years before either the filing of the petition or the filing of the counterclaims and are therefore barred by the six-year limitation of 28 U.S.C. § 2501.[1] (2) As to the fifth, the False Claims Act itself has a six-year limitation which bars defendant's fifth counterclaim and (3) the sixth must fail because the Contract Settlement Act is inapplicable to any of the prior contracts upon which this counterclaim is based.

Defendant contends that it is Section 2508 of Title 28 U.S.C.[2] which vests this court with jurisdiction over counterclaims and that the section contains no limitation on the time within which the United States can assert a counterclaim in a suit against it in this court. As for the six-year limitation contained in the False Claims Act, defendant takes the position that it only applies to *qui tam* suits by private informers under the Act and not to actions brought by the United States. While admitting that the principal concern of the Contract of Settlement Act was to provide procedures needed in connection with the termination of war contracts and that the contracts here in question were not so terminated, defendant urges that the language of the fraud provision of that act shows that it is not to be restricted to only frauds which occur under terminated contracts.

 Generally, no statute of limitation will be applied against the United States. Grand Trunk Western Ry. Co. v. United States, 252 U.S. 112, 121, 40 S.Ct. 309, 64 L.Ed. 484. In addition no limitation of action will be applied against the Government unless Congress has clearly manifested an intention that one is to apply. United States v. Wurts, 303 U.S. 414, 416, 58 S.Ct. 637, 82 L.Ed. 932; United States v. Nashville C. & St. L. R. Co., 118 U.S. 120, 125, 6 S.Ct. 1006, 30 L.Ed. 81.

 Section 2508, supra, gives this court jurisdiction over counterclaims and contains no limitation as to when they may be asserted, but this is not controlling if other statutes do fix a limitation. Plaintiff's insistence that a counterclaim is a claim within the meaning of the term "claim" as used in Section 2501, supra, and thus subject to the application of the limitation of that section against the Government as well as the claimant, cannot be supported. The immediate forerunner of Section 2501 was Section 262 of the 1940 Edition of Title 28 U.S.C. which read in part as follows:

"Every claim *against the United States* cognizable by the Court of Claims, shall be forever barred unless the petition setting forth a statement thereof is filed in the court * * * within six years after the claim first accrues. [Italics supplied.]"

The presence of the phrase "against the United States" clearly limited the application of that section to claims pre-

---

[1]. "Every claim of which the Court of Claims has jurisdiction shall be barred unless the petition thereon is filed, * * * within six years after such claim first accrues."

[2]. "Upon the trial of any suit in the Court of Claims in which any set-off, counterclaim, claim for damages, or other demand is set up on the part of the United States against any plaintiff making claim against the United States in said court, the court shall hear and determine such claim or demand both for and against the United States and plaintiff.

"If upon the whole case it finds that the plaintiff is indebted to the United States it shall render judgment to that effect, and such judgment shall be final and reviewable.

"The transcript of such judgment, filed in the clerk's office of any district court, shall be entered upon the records, and be a judgment of such district court and enforceable as such."

sented in the petition. This phrase was deleted in the 1948 revision of Title 28. Plaintiff would have us believe that Congress by a deletion in one section, 2501, intended to place a limitation on a right given the United States under another, 2508. Such is not the clear manifestation which is required when Congress intends to apply a statute of limitation against the Government. United States v. Wurts, supra. Defendant's first four counterclaims are, therefore, permitted to stand, and plaintiff's motion to dismiss them is denied.

█ Plaintiff's objection to the fifth counterclaim, however, is, in our opinion, well taken. The limitation of suit provision, 31 U.S.C.A. § 235, 12 Stat. 696, as amended by the Act of December 23, 1943, 57 Stat. 608, of the False Claims Act reads as follows:

> "Every such suit shall be commenced within six years from the commission of the act, and not afterward."

Defendant's argument that the limitation of that section applies to suits under the Act by private informers and not to those by the United States was made and rejected by the court in United States v. Borin, 5 Cir., 209 F.2d 145, 147, where the court stated:

> "It [the United States] concedes that a reading of the Congressional debates preceding the passage of the original Act in 1863 indicates the intention that the limitation was to apply to all suits (see Congressional Globe, 37th Cong., 3rd Session, p. 958); but insists that the Conference Report (H. Rept. 933, 78th Cong., 1st Session, p. 5) having to do with a 1943 amendment to the Act, limiting but not eliminating private suits, shows that the retention of the *qui tam* provision was the sole reason for leaving the time limitation undisturbed. We do not agree. To the contrary, we think that the terms of the Act are so plain and unambiguous as to make resort to legislative history unnecessary; and, further, that, if such history is referred to from the

inception of the statute, it confirms the view that the section means what it says and applies to every suit under the Act."

We agree with that holding, and since all the acts which are alleged to come within this Act occurred more than six years prior to the filing of the counterclaim on June 29, 1953, defendant's fifth counterclaim must be dismissed. Plaintiff's motion to dismiss this counterclaim is, therefore, allowed.

█ Plaintiff has moved to strike the sixth counterclaim on the ground that the fraud provision of the Contract Settlement Act applies only to those contracts which have been terminated by the cessation of hostilities and has no application here because all contracts in question upon which this counterclaim is based were fully completed.

The fraud section of the Act reads in pertinent part as follows:

> "Every person who makes or causes to be made, or presents or causes to be presented * * * any claim * * * knowing the same to be false, fradulent, or fictitious or knowing the same to contain or to be based on any false, fradulent, or fictitious statement or entry, or who shall cover up or conceal any material fact * * * for the purpose of securing or obtaining, or aiding to secure or obtain, for any person any benefit, payment, compensation, * * * from the United States * * * *in connection with the termination, cancelation, settlement, payment, negotiation, renegotiation, performance, procurement, or award of a contract* with the United States or with any other person * * *. [Italics supplied.]"

Defendant while admitting that the primary purpose of the Act was to deal with terminated contracts, points to the inclusion of "performance, procurement, or award of a contract" as an indication that Congress intended to have the provision apply to all war contracts. Such subjects, defendant urges, go beyond activities connected with contract termination.

The short answer to this assertion by defendant is, of course, that in using those terms Congress had reference to fraud which may be connected with the "performance, procurement, or award of a contract" which was subject to the Act, i. e., a terminated contract. Nor does the Act, as plaintiff alleges, apply solely to those contracts which were terminated because of the cessation of hostilities. The definition of Section 3 (d) of the Act is contrary to any such intention.[3]

While the language of the fraud provision of the statute mentioned when read apart from the Act itself lends support to defendant's position, the opposite is true when the provision is read, as it must be, as a part of an entire Act the purposes of which Congress has made quite clear. Section 1 of the Act, 58 Stat. 649, 41 U.S.C.A. § 101, entitled "Objectives of the Act" which, after covering in (a) through (e) objectives clearly directed toward contract termination, provided in paragraph (f) as follows:

"to use all practicable methods *compatible with the foregoing objectives* to prevent improper payments and to detect and prosecute fraud. [Italics supplied.]"

An examination of the legislative history supports the view that Congress had no purposes in mind when enacting the Contract Settlement Act other than those stated in Section 1. House Report 1355, 78th Cong., 2nd Sess.; Senate Report 836, 78th Cong., 2nd Sess.; House Report 1708, (Conf.Rep.) 78th Cong., 2nd Sess. The only case which has touched on this question supports this result. United States v. Leyde & Leyde, D. C., 89 F.Supp. 256, 258. There the court in discussing the Act stated:

"In view of the liberal provisions of the Act and in order to prevent the payment of fraudulent claims on the Treasury of the United States, section 19, * * * provided both

civil penalties and criminal sanctions for making fraudulent claims by war contractors *subject to the Act*. [Italics supplied.]"

Plaintiff's motion to dismiss is denied as to the first four counterclaims and granted as to the fifth and sixth. These latter two counterclaims are dismissed for the reasons above stated. The case is referred to a Commissioner of this court for further proceedings.

It is so ordered.

JONES, C. J., and MADDEN and WHITAKER, JJ., concur.

LARAMORE, Judge, took no part in the consideration or decision of this case.

**Paul D. KALV**

v.

**The UNITED STATES.**
No. 50345.

United States Court of Claims.
May 4, 1954.

---

3. "The terms 'termination', 'terminate', and 'terminated' refer to the termination or cancelation, in whole or in part, of work under a prime contract for the convenience or at the option of the Government (except for default of the prime contractor) or of work under a subcontract for any reason except the default of the subcontractor." 41 U.S.C.A. § 103(d).