**DUGAN & McNAMARA, Inc.,**
v.
**The UNITED STATES.**
Nos. 545, 552.

United States Court of Claims.

Jan. 11, 1955.

G. Fred DiBona, Philadelphia, Pa., for plaintiff. James F. Masterson, Philadelphia, Pa., was on the brief.

Jess H. Rosenberg, Washington, D. C., with whom was Asst. Atty. Gen., Warren E. Burger, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LITTLETON, Judge.

On October 5, 1954, 124 F.Supp. 650, we dismissed defendant's fifth counterclaim based on the False Claims Act, 31 U.S.C.A. § 231 et seq., because the fraudulent acts alleged to come within that Act occurred more than six years prior to the filing of the counterclaim on June 29, 1953, and were therefore

barred by the six-year period of limitations contained in the Act, § 235.

Defendant has now moved for a reconsideration of that decision and in so doing has raised an issue which was not heretofore presented to the court. Defendant's position now is that assuming the applicability of the six-year statute of limitations, that period did not commence to run until January 1, 1950, by reason of the provision of the War Time Suspension of Limitations Act, 18 U.S.C. § 3287, Supp. IV, 1946 Ed. This Act provides in pertinent part:

> "When the United States is at war the running of any statute of limitations applicable to any offense (1) involving fraud or attempted fraud against the United States or any agency thereof in any manner, whether by conspiracy or not, * * shall be suspended until three years after the termination of hostilities as proclaimed by the President or by a concurrent resolution of Congress."

The President proclaimed the termination of hostilities of World War II on December 31, 1946, 3 CFR, 1946 Supp., pp. 77–78, thus resuming the running of the statutes of limitations as of December 31, 1949.

The War Time Suspension of Limitations Act, hereafter referred to as the Suspension Act, was first enacted following World War I, 42 Stat. 220, and was again enacted as temporary legislation in 1942, 56 Stat. 747. Both statutes were similar and extended the statute of limitations as to any "offenses involving the defrauding or attempts to defraud the United States * * * and *now indictable under any existing statutes*". (Italics supplied.) With the Contract Settlement Act of 1944, 58 Stat. 649, 667, 41 U.S.C.A. § 101 et seq., the Suspension Act was amended so as to include violations of that Act. In so doing the phrase "now indictable under existing statutes" was deleted, but the statute still included the following concluding sentence:

"This section shall apply to *acts, offenses, or transactions* where the existing statute of limitations has not yet fully run, but it shall not apply to *acts, offenses, or transactions* which are already barred by provisions of existing law." (Italics supplied.)

It was later reenacted in 1944 at which time a clause was added dealing with violations of the Surplus Property Act, 58 Stat. 781. The language was then carried into 18 U.S.C. § 590a. The codification of the Criminal Code in 1948 resulted in the repeal of 18 U.S.C. § 590a and the enactment of the Suspension Act, 62 Stat. 828, in its present form, supra, as permanent legislation to be applicable whenever the country is at war.

The False Claims Act was first enacted in 1863, 12 Stat. 696. It made certain acts to defraud the Government punishable by fine and imprisonment, and provided that any person who committed any of the prohibited acts should forfeit and pay to the United States the sum of $2,000 for each act and, in addition, double the amount of the damages. It also provided a *qui tam* suit by an informer in which half of the recovery would go to the informer. The prohibited acts included the making of a claim against the United States knowing such claim "to be false, fictitious, or fraudulent". The different portions of the Act have since that date been distributed throughout the code. The portion imposing criminal penalties is now 18 U.S.C. § 287 and that providing for the statutory recovery by the United States of $2,000 for each act and double the amount of the damages is now 31 U.S.C.A. § 231.

In United States v. Grainger, 346 U.S. 235, 73 S.Ct. 1069, 97 L.Ed. 1575, the Court held that the Suspension Act was applicable to the three-year statute of limitations relating to proceedings under that portion of the False Claims Act which imposes criminal penalties. Defendant argues that since 31 U.S.C.A. § 231, involved here, and the criminal por-

tion both prohibit the knowingly making of a "false, fictitious, or fraudulent" claim against the United States, and since the Supreme Court has held that such an act constitutes an "offense" within the scope of the Suspension Act when the United States proceeds against the wrongdoer by criminal prosecution such making is an "offense" within the scope of· the Suspension Act when the United States avails itself of the civil remedies afforded to it under 31 U.S. C.A. § 231.

Plaintiff's position is that (1) the Suspension Act applies only to criminal actions and not to civil suits and (2) that even if this were not so the False Claims Act is not concerned with "offenses" requiring pecuniary or proprietary loss and is not therefore within the scope of the Suspension Act.

In United States v. Borin, 5 Cir., 209 F.2d 145, involving a civil action under the False Claims Act and relied on in our opinion of October 5, 1954, the applicability of the Suspension Act was not put in issue. United States v. Witherspoon, 6 Cir., 211 F.2d 858, was a proceeding by the Government against an individual for violation of the Surplus Property Act of 1944, 58 Stat. 765, 50 U.S.C.A.Appendix, § 1611 et seq., which provided for civil remedies identical with those of the False Claims Act, and the Suspension Act was held to be applicable although no mention was made of the criminal versus civil action issue. United States v. Weaver, D.C., 107 F. Supp. 963, was also an action under the Surplus Property Act which did meet this issue and held the Suspension Act inapplicable. However, on appeal that decision was reversed on other grounds, 5 Cir., 207 F.2d 796.

Two recent District Court decisions, United States v. Murphy-Cook and Company, D.C., 123 F.Supp. 806, and United States v. Strange Brothers Hide Co.,

D.C., 123 F.Supp. 177, 184, have resolved this identical issue in defendant's favor. In the Murphy-Cook case the court without discussion merely stated that the Suspension Act applied. In the Strange Brothers' case the court believed that United States v. Grainger, supra, although dealing with the criminal statute was dispositive of the issue stating:

"The knowingly making of a 'false, fictitious, or fraudulent' claim against the Commodity Credit Corporation in connection with its wool handling program is an 'offense' within the purview of the Wartime Suspension of Limitations Act when the United States proceeds against a wrongdoer for such wrongdoing by criminal prosecution under Section 287 of 18 U.S.C.A. United States v. Grainger, supra. *It would seem that the same wrongdoing by the same wrongdoer would be none the less an 'offense' within the purview of the Wartime Suspension of Limitations Act when the United States proceeds against him for such wrongdoing by a civil action under Section 231 of 31 U.S.C.A."* (Italics supplied.)

We do not believe this to be the complete answer, for the Grainger case left undecided the further issue which we believe is decisive of the question, that is, whether the Suspension Act by the use of the term "offense" applies to those actions where the United States seeks to recover a civil remedy. Here as in the Strange Brothers' case the violation is not of a criminal statute but one providing for civil redress by way of damages. United States ex rel. Marcus v. Hess, 317 U.S. 537, 549, 63 S.Ct. 379, 87 L.Ed. 443.

The meaning to be given the term "offense" in statutory construction is not without difficulty.[1] Stand-

---

[1]. United States v. Krebs, D.C., 104 F.Supp. 670, where the court stated that " 'offense' in its usual sense means a crime or misdemeanor, a breach of the criminal law", but see W. J. Dillner Trans.

Co. v. International Brotherhood, D.C., 94 F.Supp. 491, 493, where it was stated, "The word 'offense' usually used to describe a crime, is broad enough to in-

ing by itself we understand the term to have reference to a breach of law established for the protection of the public, usually, but not necessarily, involving criminal proceedings, as distinguished from an action to redress infringement of mere private rights for which a penalty is imposed or punishment inflicted by judicial proceeding. Pettibone v. United States, 148 U.S. 197, 13 S.Ct. 542, 37 L.Ed. 419; United States v. Hutto, 256 U.S. 524, 41 S.Ct. 541, 65 L.Ed. 1073; United States ex rel. Marcus v. Hess, supra; United States v. Winner, 7 Cir., 28 F.2d 295; United States v. Brown, D.C., 6 F.Supp. 331. Here, however, we do not have the term standing apart. The 1942 statute with the phrase "now indictable" spoke clearly of only criminal offenses. The 1944 enactment deleted that phrase, but left remaining the concluding sentence stating that the "section shall apply to acts, offenses, or transactions". This deletion leads us to the conclusion that the Suspension Act then became applicable to all actions involving fraud against the United States whether the Government should seek redress by criminal or civil means.

■ The fraudulent acts alleged here occurred during 1944 and 1945 and the six-year period of limitations applicable, 31 U.S.C.A. § 235, was tolled under the Suspension Act that was in force from 1944 through 1948.[2] On June 25, 1948, the Suspension Act was again amended in connection with the codification of Title 18 of the United States Code. The concluding sentence

mentioned above was deleted and the statute since then appears as set out at the beginning of this opinion with the term "offense" standing without the further qualifications found in the 1942 and 1944 versions. Whether or not this has served to eliminate civil actions from its meaning is immaterial for our purposes here. If the 1948 amendment does include civil offenses then, of course, the statute of limitations on defendant's counterclaim will not expire until the end of 1955; on the other hand if the 1948 amendment did once again restrict the Suspension Act to criminal offenses then the statute of limitations for our purposes began to run again on June 25, 1948, and the defendant's counterclaim having been filed on June 29, 1953, is within the six-year period.

As for plaintiff's alternative contention, it is quite clear that the fraud alleged to have been practiced was of a pecuniary nature. If defendant's position is correct then the Government has been financially injured to the extent of $102,291.46 representing the total overpayment made to plaintiff on the allegedly fraudulent invoices.

Our ruling of October 5, 1954, dismissing defendant's fifth counterclaim is set aside and plaintiff's motion to dismiss that counterclaim is denied. In all other respects the opinion of that date is to remain in full force and effect.

It is so ordered.

JONES, C. J., and LARAMORE, MADDEN and WHITAKER, JJ., concur.

clude a civil injury for which the injured party may seek redress by suit."

2. Although certain of the alleged acts occurred prior to July 1, 1944, the date of

enactment of the 1944 amendment, the suspension was to apply "where the existing statute of limitations has not yet fully run, * * *."