**FLYING TIGER LINE, INC., a Corporation**

v.

**UNITED STATES.**

No. 77–58.

United States Court of Claims.
Feb. 11, 1959.

Norman L. Meyers, Washington, D. C., for plaintiff.  Elmer E. Batzell, Meyers & Batzell and S. P. Meyers, Washington, D. C., on the brief.

Curtis L. Wagner, Jr., Knoxville, Tenn., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

MADDEN, Judge.

The plaintiff, a carrier of freight by airplane, earned $71,817.02 by transporting freight for the United States Air Force.  The Government paid the plaintiff $5,829.92, but refused to pay the balance of $65,987.10, claiming that the plaintiff was indebted to it in that amount, because the plaintiff had lost an earlier shipment of goods of the Air Force of that value, and was liable to the Government for the loss.  In its amended answer the Government says that the plaintiff's liability to it was in the amount of $67,159.91, and it makes a counterclaim for $1,172.81, the difference between what it has already collected by offset, and the value which it now places upon the lost goods.

It is apparent from the above that the real controversy between the parties concerns the prior transaction in which the Government's goods were lost while being carried by the plaintiff.  The plaintiff's plane was carrying them from a base in California to Tokyo, Japan.  When the plane was some 1,000 miles west of Honolulu, it was wrecked in the ocean because its crew did an unskillful job trying to transfer fuel from one tank to another.

The plaintiff says that it is not legally responsible for the loss.  Under ordinary rules applicable to carriers of goods, the plaintiff would, of course, be liable to the shipper of the goods.  But the plaintiff says that its liability is to be measured by the provisions of an international treaty to which the United States and Japan are parties and which limits the liability of carriers by air, when the carriage is between two countries which are parties to the treaty.  The treaty in question is commonly known as the "Warsaw Convention", 49 Stat. Part 2, pp. 3000 ff.

There is no serious question as to the applicability, in general, of the Warsaw Convention to the transportation involved in this case.  But there is a serious question as to whether certain requirements of the Convention were complied with, which compliance, the Government says, was necessary to create the limited liability which the plaintiff claims, and, the Government says, was lacking.

Article 20(2) of the Convention says:

"In the transportation of goods and baggage the carrier shall not be liable if he proves that the damage was occasioned by an error in piloting, in the handling of the aircraft, or in navigation and that, in all other respects, he and his agents have taken all necessary measures to avoid the damage."

The plaintiff says that the goods here in question were lost by an error in piloting, and we will assume, for present purposes, that this is the fact.  The Government points out that Chapter II of the Convention, entitled "Transportation Documents" provides in Section III, Article 5, that the carrier has the right to require the shipper "to make out and hand over to him a document called an 'air waybill.'"  Article 8 lists under letters (a) to (q) the information which

the air waybill is to contain. In (q) is to be "A statement that the transportation is subject to the rules relating to liability established by this convention."

Then Article 9 says:

"If the carrier accepts goods without an air waybill having been made out, or if the air waybill does not contain all the particulars set out in article 8(a) to (i), inclusive, and (q), the carrier shall not be entitled to avail himself of the provisions of this convention which exclude or limit his liability."

The plaintiff did not require the Government to make out a document labeled an "air waybill." It was given a Government bill of lading in the form prescribed by the Comptroller General. The plaintiff says that the bill of lading contained all the information listed in the Convention's Article 8 except (c) and (q). Item (c) calls for the names of "the agreed stopping places." The plaintiff says that the parties were well aware of that information, and that to have inserted it would have been useless, and its omission should not affect the rights of the parties. We are inclined to agree with the plaintiff, and we assume, for present purposes, that the plaintiff is right on this point.

As to (q), however, there is difficulty. The plaintiff points out that the carriage in question was made under a "Charter Agreement" between it and the Government, designated MCH 33–9–56, which contained paragraph 10, as follows:

"Charges for services called for herein will be based upon the carrier's tariff rate lawfully on file with the CAB, applicable to the type of service rendered and effective at the time transportation is furnished."

The plaintiff's applicable tariff at the time in question said, on its title page:

"Governed, except as otherwise provided herein, by Air Cargo Inc., Official Airfreight Rules Tariff No. 1–A, ATB No. 9, C.A.B. No. 13, Emery F. Johnson, Agent, revised pages thereto or reissues thereof."

Rule No. 3.3 of Official Airfreight Rules Tariff No. 1–A said, in part:

"The liability of carrier, with respect to international transportation, shall be subject to the rules, relating to liability established by, and to all other provisions of The Convention for the Unification of Certain Rules Relating to International Transportation by Air, signed at Warsaw, October 12, 1929. Any provision of the tariff applicable to the shipment, or of the air waybill which is inconsistent with any provision of said Convention (except to the extent that Articles 12, 13 and 14 thereof are expressly varied by the terms of the air waybill) shall, to that extent, but only to that extent, be inapplicable to international transportation."

The plaintiff urges that the requirement of item (q) in Article 8 was satisfied by the statement, quoted above, in its Charter Agreement with the Government, and the second document referred to in that document, and the third document referred to in the second document. We do not agree. The statement called for by item (q) is given great importance by the provision of Article 9 that if the carrier accepts goods without an agreement from the shipper that liability is limited, he is not entitled to the provisions of the Convention limiting liability. We think a shipper is entitled, under the Convention, to have his attention called, in understandable language, to this important waiver of what would, at least in this country, be his rights in the absence of the waiver. He may refuse to ship, if the carrier insists upon the waiver, or the carrier may refuse to carry, if the shipper refuses to waive. But the Convention is plain as to the consequences of the carrier's accepting the goods without the waiver.

Our conclusion is that the Government did not lose, by the application of the limited liability provisions of the Warsaw Convention, whatever right it had to recover from the plaintiff for the loss of its goods.

The plaintiff says that, in any event, the Government lost whatever rights it may otherwise have had, by failing to bring suit for its loss within two years after the date of the loss. Articles 28 and 29 of the Warsaw Convention read as follows:

*"Article 28*

"(1) An action for damages must be brought, at the option of the plaintiff, in the territory of one of the High Contracting Parties, either before the court of the domicile of the carrier or of his principal place of business, or where he has a place of business through which the contract has been made, or before the court at the place of destination,

"(2) Questions of procedure shall be governed by the law of the court to which the case is submitted.

*"Article 29*

"(1) The right to damages shall be extinguished if an action is not brought within 2 years, reckoned from the date of arrival at the destination, or from the date on which the aircraft ought to have arrived, or from the date on which the transportation stopped.

"(2) The method of calculating the period of limitation shall be determined by the law of the court to which the case is submitted."

█ In the instant case the Government did not bring an action for damages within two years, or at all. Within two years from the time of the loss it advised the plaintiff that it was setting off its claim for damages against its debt to the plaintiff on the other account. When the plaintiff brought the instant suit on the other account, the Government, by way of answer, pleaded the setoff. By its amended answer, it made a counterclaim for $1,172.81, as we have recited above.

The plaintiff points out that Article 29 says the right to damages shall be extinguished if an action is not brought within two years. The Government says that Article 29 has nothing to do with a case such as the instant one, in which the claimant has an opportunity to pay himself by offset, and does so pay himself. In support of its contention, the Government cites United States v. Munsey Trust Co., 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022. That case held that the United States has the same right as any other creditor to apply money belonging to its debtor which it has in its hands to extinguish a debt which the debtor owes to it. The question, then, is whether a creditor, in a transaction arising under the Warsaw Convention, can decline to institute an action for damages and instead apply the claim as a setoff as the Government here attempts to do.

██ Section 2508 of Title 28 of the United States Code confers upon this court the jurisdiction to hear and determine any setoff, counterclaim, claim for damages, or other demand on the part of the United States against a plaintiff asserting a claim against it. A setoff or counterclaim is, in its nature and effect, like an independent action by the defendant against the plaintiff, and, as a general rule, a party cannot avail himself of a claim as a setoff or counterclaim unless it is a legally subsisting cause of action upon which he could maintain an independent action. 80 C.J.S. Set-off and Counterclaim §§ 1, 25 and 26. A statute of limitations may be pleaded against a counterclaim or setoff. 53 C.J.S. Limitations of Actions § 106. This court has had occasion to consider the problem of a statute of limitations as a bar to a counterclaim. Dugan & McNamara, Inc. v. United States, 124 F.Supp. 650, 130 Ct.Cl. 603; Canned Foods, Inc. v. United States, 146 F.Supp. 470, 135 Ct.Cl. 862, and Erie Basin Metal Products, Inc. v. United States, 150 F.Supp. 561, 138 Ct.Cl. 67. The case presently before the court involves not the problem of a statute of limitations but the problem of the extinguishment of the right itself. See Judge Yankwich's opinion in Adams v. Albany, D.C., 80 F.Supp. 876, 880, in which he cites instances in American law in which the expiration of the prescribed

period within which suit may be brought has been held to extinguish the right and not merely bar the remedy.

■ The language of Article 29 is plain and, if taken literally, plainly means that the passage of two years without suit extinguishes the claim. The original text of the Warsaw Convention was French, but neither party objects to the English translation which we have quoted. The document being a writing accomplished by international agreement, an American court does not have the right to interpret it as freely as it might interpret an American statute or contract.

As we have said, the Government brought no action on its claim within the two-year period prescribed by the Convention. If the Government had, within the two years, put the matter in litigation by making a counterclaim, or asserting a setoff in an answer, in an action brought by the plaintiff, that might conceivably be regarded as the substantial equivalent of bringing an action. But the Government did none of these things within the two years. All that it did was to make up its mind to pay itself out of money otherwise due the plaintiff, record that decision on its account books, and advise the plaintiff of what it had done. These actions were in no sense the substantial equivalent of the lawsuit prescribed by the Convention. See Climatic Rainwear Co. v. United States, 88 F.Supp. 415, 115 Ct.Cl. 520, 553. Although the Government can withhold money, as it did here, such unilateral action by the Comptroller General is subject to judicial review as shown by the Munsey Trust Co. and Climatic Rainwear decisions, already cited. In the instant case, we cannot review the validity of the claim which the Government is trying to use as an offset because that claim has been extinguished by the passage of time.

A case similar in its essentials to the instant one is Grace Line, Inc. v. United States, 2 Cir., 255 F.2d 810. In that case the Court refused to allow the Government to offset against the libelant's claim an amount owing to the Government under an earlier and unrelated transaction. That decision rested upon two grounds. One was that admiralty jurisdiction extends only to setoffs arising out of the same transaction upon which the libel is based. The other ground was that the claim arising under the prior transaction was time-barred by the one-year statute of limitations embodied in the bills of lading in that transaction and in the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1301 et seq., incorporated by reference into those bills of lading. The court, in a well-reasoned opinion by Judge Medina, held that the Comptroller General's unilateral withholding of money belonging to the libelant did not toll the statute of limitations and there was, therefore, no "legally enforceable claim" which the Government could use as an offset. The case presently before the court differs from the Grace Line case in one respect. In Grace Line, the prior claim was already time-barred at the time the Comptroller General withheld the money, whereas here the earlier claim was extant at the time of the withholding but that claim for damages became barred and the right extinguished prior to the time the plaintiff instituted this action. This distinction is, we believe, immaterial. The earlier claim was not only stale but nonexistent at the time the Government tried to apply it as an offset to the plaintiff's cause of action. It may be that this holding will force the Government to institute judicial proceedings whenever it has a claim for damages arising under the Warsaw Convention, even though it has in its hands money belonging to its debtor with which it could pay itself. We agree with the Second Circuit, in the Grace Line case, that such a requirement is not unduly onerous, and, in this case we feel it is necessary in order to carry out the purpose of Article 29 of the Warsaw Convention to protect parties from stale claims.

The defendant's motion for a summary judgment is denied. The plaintiff's motion for a summary judgment is granted

and a judgment will be entered for the plaintiff in the amount of $65,987.10.

It is so ordered.

JONES, Chief Judge, and LARA-MORE and WHITAKER, Judges, concur.