K. Chandapillai SETH, Plaintiff, Appellant,

v.

BRITISH OVERSEAS AIRWAYS CORPORATION, Defendant, Appellee.

BRITISH OVERSEAS AIRWAYS CORPORATION, Defendant, Appellant,

v.

K. Chandapillai SETH, Plaintiff, Appellee.

Nos. 6138, 6150.

United States Court of Appeals First Circuit.

Heard Oct. 9, 1963.

Decided March 23, 1964.

Daniel F. Featherston, Jr., Boston, Mass., with whom Stephen F. Ells and Choate, Hall & Stewart, Boston, Mass., were on brief, for K. Chandapillai Seth.

David H. Fulton, Boston, Mass., with whom Robert Fulton, Boston, Mass., was on brief, for British Overseas Airways Corp.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

WOODBURY, Chief Judge.

These are appeals from a judgment in the amount of $331.60 entered for the plaintiff in an action for the loss of two pieces of baggage.

The plaintiff below, Kunniparampil Chandapillai Seth, referred to hereinaft-

er for convenience as either the plaintiff or Seth, is a citizen of India and a priest of the Episcopal Church. The World Council of Churches awarded him a year's fellowship for advanced study at the Episcopal Theological Seminary in Cambridge, Massachusetts, and presented him with two airline tickets it had purchased in his name from British Overseas Airways Corporation, BOAC, hereinafter. One ticket entitled Seth to passage from Trivandrum to Cochin and from Cochin to Bombay by Indian Air Lines and from Bombay to Beirut to London by Middle East Airlines.[1] The other ticket issued by BOAC for its own account entitled Seth to passage on one of its flights from London to Boston. Under both tickets Seth was entitled to 20 kilograms of checked baggage without additional charge.

Seth went by train from Trivandrum to Cochin, where, without declaring excess value, he checked his two bags weighing a total of 20 kilograms at the Indian Air Lines counter and departed on his flight to Bombay. At Bombay he presented the baggage checks he had received in Cochin, reclaimed his baggage, re-checked it with BOAC to London, receiving therefor two baggage claim tags in proper form, and passed his bags through customs. Seth has not seen them since. During a layover between planes at Beirut Seth inquired about his bags from BOAC employees who assured him that his bags would be forwarded on his flight and that he could reclaim them by presenting his claim checks to BOAC in London. In London he presented his claim checks to BOAC, but his baggage could not be found.

The next morning he presented his claim checks to BOAC again, but his baggage still could not be found, and he boarded his flight to Boston with only his passport and an attache case containing toilet articles. Diligent efforts by BOAC to trace Seth's bags have proved fruitless. Where they disappeared and under what circumstances remain a mystery.

Seth brought suit against BOAC in the United States District Court for the District of Massachusetts in three counts, each on a different theory, to recover the damage he alleges he sustained by the loss of his baggage, presumably, the court below found, in Beirut. The theory of the first count is that jurisdiction lies under Title 28 U.S.C. § 1331(a) because the suit is a civil action wherein the matter in controversy exclusive of interest and costs exceeds the sum or value of $10,000 and arises under a treaty of the United States, that is to say, the Warsaw Convention,[2] so called, to be considered presently. The theory of the second count is that jurisdiction lies under Title 28 U.S.C. § 1337 because the suit is a civil action arising under an Act of Congress regulating commerce. The theory of the third count is that jurisdiction lies under Title 28 U.S.C. § 1350 because it is a civil action by an alien for a tort only committed in violation of a treaty of the United States.

The court below held that it had jurisdiction but only under § 1331(a) supra, and that the limitation of liability for loss of checked baggage of the Warsaw Convention applied since the flight from India to the United States, although by several successive air carriers, was one undivided transportation between the territories of adherents to the Convention. Article 1 of the Warsaw Convention, 49 Stat. 3014, 3015 (1929). Wherefore the court entered judgment for BOAC on counts 2 and 3 and on count 1 awarded damages to Seth in the amount of $331.60, that being the conceded equivalent in United States money to 250 French gold francs per kilogram of the

---

1. BOAC issued this ticket as "agent only" for Indian Air Lines but as principal for its subsidiary Middle East Airlines.

2. Officially the "Convention for the Unification of Certain Rules relating to International Transportation by Air" done at Warsaw on October 12, 1929, and adhered to by the United States as of October 29, 1934. 49 Stat. Part 2, 3000. Subsequent citations are to the English translation commencing at 49 Stat. 3014.

lost baggage. Both parties appealed, BOAC on the ground that the court below lacked jurisdiction, Seth on the ground that the court below erred in holding that BOAC was entitled to avail itself of the provision of the Warsaw Convention quoted from hereinafter limiting its liability for the loss of checked baggage to the amount awarded.

We shall consider the contentions in the order stated.

■ By adhering to the Warsaw Convention the United States agreed to a treaty which in its Article 18(1) provides that the air carrier "shall be liable for damage sustained" in the event of the loss of checked baggage taking place "during the transportation by air" and in its Article 18(2) defined "the transportation by air" as comprising "the period during which the baggage" is "in charge of the carrier, whether in an airport or on board an aircraft." Moreover, the Convention in its Article 30(3) provides that in the case of transportation by various successive carriers falling within the definition of one undivided transportation as defined in its Article 1(3), which Seth's transportation undoubtedly was, the passenger entitled to delivery "shall have a right of action against the last carrier." Thus the Convention not only imposes liability on an air carrier for the loss of checked baggage but also gives a passenger whose baggage is lost a right of action to enforce that liability. Seth's action, therefore, seems clearly to be one arising under a treaty of the United States.

The question remains whether there is a sufficient amount in controversy to meet the jurisdictional requirement of § 1331(a).

■ Seth alleged generally in his complaint that his loss amounted to more than double the $10,000 necessary for jurisdiction under § 1331(a). This seems a high valuation for two bags of an Indian cleric. But we cannot say that it apears "to a legal certainty," St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938), from the face of the complaint that Seth could not possibly recover the amount he claimed with the result that his claim must have been colorably made to confer jurisdiction. Seth's claim of loss having been made in apparent good faith, his claim controls as to dismissal for want of jurisdictional amount, id. 303 U.S. at 288, 58 S.Ct. 586, 82 L.Ed. 845. But BOAC by pre-trial motion challenged jurisdiction on the ground that actually less than the jurisdictional amount was involved. This put the value of Seth's bags in issue, but it was not error for the court below to deny this motion and postpone decision of that issue until after trial, Food Fair Stores v. Food Fair, 177 F.2d 177, 182 (C.A. 1, 1949), for: "As there is no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court." Gibbs v. Buck, 307 U.S. 66, 71, 72, 59 S.Ct. 725, 729, 83 L.Ed. 1111 (1939).

The only testimony introduced at the trial was Seth's deposition. In it he testified that his lost bags contained miscellaneous articles of wearing apparel and books, which he valued at over $1,000, and the only copies in existence of manuscripts for two books which he valued at $10,000.[3] Seth's valuations may well be excessive. Indeed the court below found that they were. But we do not think it follows "to a legal certainty" from the plaintiff's proofs that he never could have been entitled to recover the amount he claimed.

■ We think that manuscripts for religious treatises properly form part of the baggage of a cleric and scholar on his way to pursue advanced study. See Wood v. Cunard S.S. Co., 192 F. 293, 41 L.R.A.,N.S., 371 (C.A. 2, 1911), and cases cited. And although the manuscripts were unique, and in the case of an author

---

3. This testimony of the plaintiff clearly distinguishes this case from Panama Transport Co. v. Greenberg, 290 F.2d 125 (C.A.1), cert. denied, 368 U.S. 891, 82 S.Ct. 143, 7 L.Ed.2d 88 (1961), upon which counsel for BOAC relies.

without an established reputation manuscripts not accepted for publication are incapable of exact valuation in money, it does not follow that Seth's manuscripts were worthless. They had value to Seth for the many hours of labor he said he had put into them, see Newman v. Clayton F. Summy Co., 133 F.2d 465, 466 (C.A. 2, 1943), and, as the court below found, value to him also in preparing academic theses, in earning higher academic degrees, in enhancing his professional reputation and in securing employment in his church. While Seth's valuation may be excessive, we are not prepared to say "to a legal certainty" that his valuation was colorable in order to confer jurisdiction. St. Paul Mercury Indemnity Co. v. Red Cab Co., supra, 303 U.S. 289, 58 S.Ct. 586, 82 L.Ed. 845. We hold that federal jurisdiction lies under § 1331(a) and therefore do not consider or need to consider whether federal jurisdiction might also be predicated upon § 1337 or § 1350, supra.

■ Seth's principal contention as appellant in No. 6138 is that BOAC is not entitled to avail itself of the provisions of Article 22(2) of the Warsaw Convention limiting its liability for baggage checked without a special declaration of value to 250 gold French francs per kilogram for the reason that it failed to comply with the requirement of Article 4 of the Convention which so far as material provides:

"(1) For the transportation of baggage, other than small personal objects of which the passenger takes charge himself, the carrier must deliver a baggage check.

\* \* \* \* \* \*

"(3) The baggage check shall contain the following particulars:

\* \* \* \* \* \*

"(f) The number and weight of the packages;

\* \* \* \* \* \*

"(h) A statement that the transportation is subject to the rules relating to liability established by this convention.

"(4) \* \* \* if the baggage check does not contain the particulars set out at \* \* \* (f), and (h) above, the carrier shall not be entitled to avail himself of those provisions of the convention which exclude or limit his liability."

We accept the decision and the reasoning of the court below as to compliance with sub-paragraph (f). That court said:

"Plaintiff has not proved that defendant failed to comply with sub-paragraph (f). Exhibit 1, the passenger ticket and baggage check [4] covering all that part of Seth's air journey from Trivandrum to London, explicitly stated that Seth had two pieces of baggage which weighed 20 pounds. [actually, but immaterially, 20 kilograms] That was a precisely correct statement of the number and weight of Seth's packages when he left Trivandrum. Exhibit 2, the passenger ticket and baggage check covering the journey from London to Boston, did not show any baggage on that leg of the journey. But Seth has not shown that he had any baggage when he reached London or on the stage of the journey from London to Boston. Hence there is no reason to find that that ticket had an error or omission." Seth v. British Overseas Airways Corp., 216 F.Supp. 244, 248 (D.Mass. 1963).

■ Seth's main contention is that the statement on the passenger ticket that: "Carriage hereunder is subject to the rules and limitations relating to liability established by the Convention for the Unification of Certain Rules relating to International Carriage by Air, signed at Warsaw, October 12, 1929 (hereinafter

---

4. The "Conditions of Contract" on the ticket note that "ticket" means both "passenger ticket" and "baggage check."

Seth does not contend that the check may not be so incorporated into the ticket.

called "the Convention'), unless such carriage is not 'international carriage' as defined by the Convention", does not constitute compliance with sub-paragraph (h) of Article 4(3), supra, requiring: "A statement that the transportation is subject to the rules relating to liability established by this convention." The argument in a nutshell is that the "unless" clause destroys what otherwise would constitute compliance with sub-paragraph (h) because considered as a whole the statement on the ticket does not categorically inform the passenger that his transportation is subject to the Convention.

We do not agree.

The statement on the ticket quoted above gives the passenger clear notice that limitations on the carrier's liability for the loss of checked baggage are provided by the Warsaw Convention and that the carrier will avail itself of those limitations if it can. The ticket does not leave the passenger in the dark as to a hidden risk he might not appreciate. It gives him fair warning of the existence of limitations on the carrier's liability which he can avoid only on showing that the carriage undertaken by the carrier is not "international carriage" as defined in the Warsaw Convention. This gives the passenger blunt warning to find out the nature of his carriage and if covered by the Warsaw Convention to declare excess value and pay the price for increased liability in the event his baggage is lost. We think this constitutes compliance with sub-paragraph (h) of Article 4 of the Warsaw Convention.

We are not aware of any precedent for this conclusion other than the decision of the court below nor are we aware of any precedent for the contrary conclusion.

Flying Tiger Line, Inc., v. United States, 170 F.Supp. 422, 145 Ct.Cl. 1 (1959), is not even analogous support for Seth's position, for in that case there was nothing whatever in the bill of lading itself which could be deemed to be compliance with a sub-paragraph (q) of Article 8 which is identical with sub-paragraph (h) of Article 4 but applies to air waybills for goods. To find any possible compliance with the requirement for notice of limitation of liability in the Flying Tiger case reference was necessary to the Charter Agreement between the air line and the government, to a second document referred to in that agreement and then to a third document referred to in the second document. See page 424 of 170 F.Supp.

Nor is Westminster Bank, Ltd., v. Imperial Airways, Ltd., 55 Lloyd's List L.R. 242 (K.B., 1936), also cited and relied upon by the plaintiff, an authority in his favor, for in that case the court held that the requirement of Article 8(q), which as we have pointed out corresponds with subparagraph (h) of Article 4, was not satisfied by the statement on the back of a consignment note covering an air shipment of gold that: "The General Conditions of Carriage of Goods are applicable to both internal and international carriage. These General Conditions are based upon the Convention of Warsaw of Oct. 12, 1929, in so far as concerns international carriage within the special meaning of the said Convention." Id. at 247–248. The court in reaching its conclusion did not mention the "in so far as" clause, which has relevance to the issue before us, but found the statement on the back of the shipping document insufficient because "a statement that the carriage is subject to certain general conditions of carriage of goods, which general conditions are based upon the Convention, is not a statement that the carriage is subject to the rules relating to liability established by the Convention. * * * To say that certain conditions are applicable to the carriage, which said conditions are based upon the Convention is, in my opinion, a very different matter than saying that the Convention governs the carriage." Id. at 248. We are not persuaded by these authorities to disagree with the decision of the court below.

Judgments will be entered affirming the judgment of the District Court; no costs.