**K. Chandapillai SETH**

v.

**BRITISH OVERSEAS AIRWAYS CORPORATION.**

Civ. A. No. 61–458.

United States District Court
D. Massachusetts.

April 12, 1963.

Daniel F. Featherston, Jr., Choate, Hall & Stewart, Boston, Mass., for plaintiff.

David H. Fulton, Boston, Mass., for defendant.

WYZANSKI, District Judge.

By stipulation of the parties, this action is before me solely on the basis of evidence offered April 11, 1963.

Plaintiff Seth sues defendant BOAC in three counts, each of which, on a different theory, seeks recovery for damages plaintiff says he sustained when his luggage was lost, presumably at Beirut, during an airplane journey plaintiff was making, by connecting carriers from Trivandrum, India to Boston, Massachusetts. The theory of the first count is that this Court has jurisdiction under 28 U.S.C. § 1331 because this is one of those "civil actions wherein the matter in controversy exceeds the sum or value of $10,000 * * * and arises under * * * treaties of the United States." The theory of the second count is that this Court has jurisdiction under 28 U.S.C. § 1337 because this is a "civil action arising under" an "Act of Congress regulating commerce." The theory of the third count is that this Court has jurisdiction under 28 U.S.C. § 1350 because this is a "civil action by an alien for a tort only, committed in violation of * * * a treaty of the United States."

Seth lives in Koeukulanjinkerala, India, and is an Indian citizen.

The World Council of Churches bought from BOAC two separate tickets. In the first, BOAC, as agent only, sold for Indian Airlines, as principal, passage from Trivandrum to Cochin to Bombay, and for Middle East Lines, as principal, passage from Bombay to Beirut, to London. In the second ticket, BOAC, for its own account, sold passage from London to New York.

Each ticket had the same printed "Conditions of Contract" which, so far as relevant, read:

"1. As used in this contract, 'ticket' means 'Passenger Ticket and Baggage Check,' 'carriage' is equivalent to 'transportation,' and 'carrier' includes the air carrier issuing this ticket and all air carriers that carry or undertake to carry the passenger or his baggage hereunder or perform any other service incidental to such air carriage; 'damage' includes death, injury, delay, loss or other damage of whatsoever nature arising out of or in connection with carriage or other services performed by carrier incidental thereto. Carriage to be performed hereunder by several successive carriers is regarded as a single operation."

"2(a). Carriage hereunder is subject to the rules and limitations relating to liability established by the Convention for the Unification of Certain Rules relating to International Carriage by Air, signed at Warsaw, October 12, 1929 (hereinafter called 'the Convention'), unless such carriage is not 'international carriage' as defined by the Convention. (See carrier's tariffs, conditions of carriage for such definition.) Carrier's name may be abbreviated in the ticket, the full name and its abbreviation being set forth in carrier's tariffs, conditions of carriage, regulations or timetables; and carrier's address shall be the airport of departure shown opposite the first abbreviation of carrier's name in the ticket; and for the purpose of the Convention the agreed stopping places (which may be altered by carrier in case of necessity) are those places, except the place of departure and the place of destination, set forth in this ticket and any conjunction ticket issued herewith, or, as shown in carrier's timetables as scheduled stopping places on the passenger's route."

"2(b). To the extent not in conflict with the foregoing, all carriage hereunder and other services performed by each carrier are subject to (i) applicable laws (including national laws implementing the Convention or extending the rules of the Convention to carriage which is not 'international carriage' as defined in the Convention), government regulations, orders and re-

quirements, (ii) provisions herein set forth, (iii) applicable tariffs, and (iv) except in transportation between a place in the United States and any place outside thereof, conditions of carriage, regulations and timetables (but not the time of departure and arrival therein) of such carrier, which are made part hereof and which may be inspected at any of its offices and at airports from which it operates regular services."

"4. Subject to the foregoing:

"(a) Liability of carrier for damages shall be limited to occurrences on its own line, except in the case of checked baggage as to which the passenger also has a right of action against the first or last carrier. A carrier issuing a ticket or checking baggage for carriage over the lines of others does so only as agent.

"(b) Carrier is not liable for damage to passenger or unchecked baggage unless such damage is caused by the negligence of carrier.

"(c) Carrier is not liable for any damage directly and solely arising out of its compliance with any laws, government regulations, orders or requirements, or from failure of passenger to comply with same.

"(d) Any liability of carrier is limited to 250 French gold francs (consisting of 65½ milligrams of gold with a fineness of nine hundred thousandths) or its equivalent per Kilogram in the case of checked baggage, and 5,000 such French gold francs or its equivalent per passenger in the case of unchecked baggage or other property, unless a higher value is declared in advance and additional charges are paid pursuant to carrier's tariffs or regulations. In that event the liability of carrier shall be limited to such higher declared value. In no case shall the carrier's liability exceed the actual loss suffered by the passenger. All claims are subject to proof of amount of loss.

"(e) Any exclusion or limitation of liability of carrier under these conditions shall apply to agents, servants or representatives of the carrier acting within the scope of their employment and also to any person whose aircraft is used by carrier for carriage and his agents, servants or representatives acting within the scope of their employment."

The World Council gave both tickets to Seth. All the affected airlines, including defendant, treated Seth as a proper assignee of all The World Council's contractual rights with respect to carriage of person and property.

Seth used these tickets for travel from India to Boston in September 1960.

At the start of this trip Seth had two pieces of luggage. The first ticket (Ex. 1) referred to these two pieces and gave their weight as 20 pounds; but the second ticket gave no information as to baggage. The two pieces contained miscellaneous articles and two manuscripts.

The miscellaneous articles (listed in Exhibit 7 attached to Seth's deposition,) were valued by him at over $1,064.95. This valuation was excessive. The two diplomas (items 17 and 18) had a value of $5 each, not of $250 each. Other items, particularly of clothing, appear to reflect not value, but original cost. A fair value of all the miscellaneous articles is $350.

The manuscripts were valued by Seth at $10,000. (See Deposition, page 50). Seth reached this valuation principally on the basis of 8,000 hours which he spent in preparing the material, and on the basis of unspecified additional hours which his wife spent assisting him. There was evidence that Seth has no copies of these manuscripts and no notes used in preparing them. There was no evidence admitted by the Court as to the market value of these manuscripts. But there was credible evidence that they would have been of assistance to Seth in presenting academic theses, in securing higher academic degrees, in estab-

lishing a professional reputation, and in obtaining employment.

This Court finds that there is no persuasive evidence of the exchange value of these manuscripts; but that the peculiar value of the manuscripts to Seth was $4,000. (See Restatement, Torts § 911, and particularly comment (e), pp. 567–568).

If paragraph 4(d) of the above quoted "Conditions of Contract" apply to the miscellaneous articles and the manuscripts, the recoverable value of Seth's entire luggage is limited to $331.60.

At Bombay, Seth delivered to employees of BOAC, acting as agents for Middle East Airlines, the two pieces of luggage for carriage by Middle East Airlines from Bombay via Beirut to London. For these pieces of luggage, BOAC as agent issued two "interline baggage claim tags." Each stated "Baggage checked subject to tariffs, including limitations of liability therein contained. * * * This is not the luggage ticket (baggage check) described by Article 4 of the Warsaw Convention."

Middle East Airlines carried Seth and his luggage from Bombay to Beirut. Seth himself continued by Middle East Airlines to London and by BOAC from London to Boston. There is no evidence as to what happened to Seth's luggage after it reached Beirut. There is no evidence that Middle East Airlines or any other carrier, or any agent or employee of any carrier failed to exercise care with respect to that luggage, or converted that luggage, or by any act of omission or commission was the cause of the disappearance of that luggage.

Seth now seeks to recover from BOAC the full value of his luggage. BOAC denies that it has any liability to Seth; and adds that if liability exists it is limited to $331.60 by virtue of the conditions set forth in the two tickets which the World Council of Churches bought from BOAC, each of which states that it is a "Passenger Ticket and Baggage Check."

Upon the foregoing facts this Court reaches the following conclusions:

1. This Court has jurisdiction under 28 U.S.C. § 1331. In reaching this conclusion, this Court has treated the "manuscripts" as part of Seth's baggage, and has noted that he valued them and his other lost possessions at an amount in excess of $10,000.

2. The carriage of Seth and his baggage constituted an international carriage covered by The Warsaw Convention, 49 Stat. 3000. To that Convention the United States has adhered. Pekelis v. TWA, Inc., 2nd Cir., 187 F.2d 122, 123.

3. Under the explicit terms of Article 1(3) of that Convention, 49 Stat. 3015, as well as under the implied understanding of BOAC and The World Council when the tickets were bought, the whole transportation from Trivandrum to Boston, though covered by two separate tickets and though "performed by several successive air carriers" must be "deemed * * * to be one undivided transportation * * *." 49 Stat. 3015.

4. The baggage checks issued by BOAC, as agent and principal, to the World Council, the assignor of Seth, purport to meet the standards of the Warsaw Convention. But plaintiff contends that these tickets failed to comply with Article 4(3) (f) and (h) of that Convention. 49 Stat. 3015, 3016.

5. So far as relevant, Article 4 provides that:

"(3) The baggage check shall contain the following particulars:

* * * * * *

"(f) The number and weight of the packages;

* * * * * *

"(h) A statement that the transportation is subject to the rules relating to liability established by this convention.

"(4) * * * if the baggage check does not contain the particulars set out at * * * (f), and (h) above, the carrier shall not be entitled to

avail himself of those provisions of the convention which exclude or limit his liability."

■ 6. Plaintiff has not proved that defendant failed to comply with subparagraph (f). Exhibit 1, the passenger ticket and baggage check covering all that part of Seth's air journey from Trivandrum to London, explicitly stated that Seth had two pieces of baggage which weighed 20 pounds. That was a precisely correct statement of the number and weight of Seth's packages when he left Trivandrum. Exhibit 2, the passenger ticket and baggage check covering the journey from London to Boston, did not show any baggage on that leg of the journey. But Seth has not shown that he had any baggage when he reached London or on the stage of the journey from London to Boston. Hence there is no reason to find that that ticket had an error or omission.

7. Nor has plaintiff proved that defendant failed to comply with subparagraph (h), requiring that he be given "a statement that the transportation is subject to the rules relating to liability established by this convention." Each baggage check, that is Exhibits 1 and 2, states in condition 2(a) that "Carriage hereunder is subject to the rules and limitations relating to liability established by the Convention for the Unification of Certain Rules relating to International Carriage by Air, signed at Warsaw, October 12, 1929 (hereinafter called "the Convention"), unless such carriage is not 'international carriage' as defined by the Convention." This is a clear warning to the passenger that the carrier claims a right to limit liability. Despite plaintiff's argument to the contrary, this Court holds that the "unless" clause does not make the warning less significant or in any way ambiguous. It does not make the passenger subject to a hidden risk which he might not appreciate. Indeed, it adds to, rather than subtracts from, a passenger's rights. Any reasonable traveler would recognize that he was being put on notice that limitations of liability existed and he could escape only if he proved that the carriage was not international. Moreover, Seth has not shown that the "unless" clause had any possible application to his journey.

■ 8. From the preceding discussion it follows that Seth's recovery is governed by the already quoted paragraph 4(d) of the "Conditions of Contract." Under that paragraph the amount recoverable is limited, as stated in the findings of fact, to $331.60.

9. For this $331.60 BOAC is liable on Count 1. Art. 30(3) of the Warsaw Convention, 49 Stat. 3021 makes the last carrier liable to the passenger for loss of his baggage occurring at any stage of the journey. It has already been noted, in conclusion 3. above, that the whole transportation from Trivandrum to Boston constituted a contract for one undivided transportation. In that contract for one undivided transportation BOAC admittedly was named as the "last carrier." The named last carrier does not escape that designation, or the liability attached thereto, by showing that it never received the baggage or that the baggage was lost during a stage of the carriage preceding the last carrier's expected transportation. Rotterdamsche Bank N. V. et al. v. BOAC, et al, 1 Ll. L.L.R. 154 (U.K. High Court, 1953). It is the purpose of the Warsaw Convention to allow the passenger to recover from the named last carrier, and to make that particular carrier (who is in a better position than the passenger to learn the facts), pursue whatever preceding carrier, if any, is truly at fault and to make it ultimately bear the loss.

10. There being no evidence that BOAC committed a tort or violated any act of Congress, Counts 2 and 3 are dismissed with prejudice.

Judgment for plaintiff on Count 1 for $331.60 and for defendant on Counts 2 and 3. No costs are allowed.